## 11570

### MITCHELL v. MITCHELL *ET AL.*

#### (123 S. E., 854)

WILLS—CONVEYANCES BETWEEN BENEFICIARIES UNDER WILL HELD TO PASS GOOD TITLES.—Under a will giving gift over to testator's daughter for life, and then to such of her issue as may be living at her death, and their heirs, with remainder over on default of issue to nephews and nieces, and, under an agreement by daughter, granddaughter and contingent remaindermen by which part of realty was apportioned to contingent remaindermen and balance to daughter and granddaughter in fee simple, discharging all conditions imposed by will, daughter and granddaughter on one side and nephews and nieces on other relinquishing their claims reciprocally to real estate apportioned to them, *held,* that each of the parties secured a good title.

Before MAULDIN, J., Spartanburg, 1923, Affirmed.

Action by Margaret V. Mitchell against Margaret F. Mitchell and others. Judgment for plaintiff and the named defendant appeals.

The Circuit decree, referred to in the opinion of Mr. Justice Watts, follows:

This is an action brought by the plaintiff, a life tenant, under the will of Frank M. Trimmier, her father, against the defendants, who are the remaindermen under the said will, the object being to obtain a construction of the will, thus enabling the Court to ratify a parol partition had between all the parties and a winding up of the estate and, failing in that, that the life tenant be granted relief by

Note: On construction of word "heirs" in deed to mean children, see note in 1 L. R. A. (N. S.), 319.

selling certain unimproved property bearing no income and absorbing a greater part of the income of the life tenant from other property to which she is entitled. The Master denied the relief asked for in the first part of the action, but granted that prayed for in the second cause of action.

The case comes before me on exceptions to the Master's report, all parties except the defendant Margaret F. Mitchell alleging error in the failure of the Master to ratify the parol partition entered into between the parties and construing the words "surviving issue" in the will to mean "children." The defendants also except to the report of the Master, wherein he grants the relief prayed for in the second cause of action. The undisputed facts are as follows:

F. M. Trimmier, for about 20 years a clerk of the Court of Spartanburg County, died some time during the year 1888. He was succeeded by his nephew, T. R. Trimmier, one of the defendants to this action and a beneficiary under his will. F. M. Trimmier was a bachelor and lived with his mother and unmarried sister, and the plaintiff, who is his natural daughter, adopted by him and taken into the home of his mother and taken care of by his mother and sister. He had a number of nieces and nephews to whom he was devoted, and according to the testimony acted as a father, they being orphans. He left a will in which he devised all of his estate to his mother, Margaret H. Trimmier, for and during the term of her natural life, and after her death, then to his sister, Margaret L. Trimmier, for and during the term of her natural life. After the death of his sister, he bequeathed and devised all of his property to his daughter, Margaret V. Trimmier, now Margaret V. Mitchell, the plaintiff in this action, for and during the term of her natural life, and after her death, then to such issue of his said daughter as may be living at her death; but in case she should die without leaving issue her surviving, then all of his estate was to go to his nieces and nephew, the defendants, herein mentioned, except Margaret F. Mitchell, who is

the daughter of the plaintiff, to them and their heirs forever.

Taking into consideration the will as a whole and the scope of its design, it is perfectly clear that the testator intended to provide for all those who were near and dear to, and dependent upon, him. He was possessed of considerable estate, consisting largely of unimproved lots in the City of Spartanburg, plantations in Union and Spartanburg Counties, and several buildings. As the years went by the buildings became old, dilapidated, and deteriorated rapidly in value, the city having outgrown them in every sense of the word, and the income of the life tenant being insufficient to renew them or to build new buildings upon the unimproved lots. She received no income whatever from the unimproved property, and practically nothing from the farms, being compelled to employ other persons to manage the estate for her. Matters went from bad to worse until the taxes accumulated on the property to such an extent that the life tenant was unable to pay the same. They amount now to nearly $15,000. Both the mother and sister of the testator died some years ago and the only remaining life tenant is the daughter, Margaret V. Mitchell, who married in the City of Chicago, and from this union came the defendant Margaret F. Mitchell, who is now over 21 years of age. Mrs. Mitchell became divorced from her husband and has lived ever since in Asheville, in the State of North Carolina, her affairs in Spartanburg being managed by one agent after another. She herself is now 51 years of age, has undergone a change of life, and there is no possibility of further issue.

The life tenant is unable to secure tenants for the farms and the taxes have become so burdensome that the income from the estate is insufficient to guarantee the daughter of the testator a living, and at the same time preserve the estate from ruin and absolute absorption for taxes. The stores in the City of Spartanburg are badly in need of repairs, and in

order to obtain funds to meet the depreciation, it is necessary for her to rent the property at a much reduced figure, upon the tenant agreeing to make certain repairs thereon. The Colonial Trust Company, a corporation located in the City of Spartanburg, has been appointed trustee for the personal property of the estate under the terms of the will, and Mr. Screven, president of this concern, testifies that the income of the estate was totally inadequate to furnish the plaintiff herein with sufficient money on which to live, and at the same time pay the taxes due and the necessary expense of the upkeep. Realizing the hopelessness of the situation and the impending calamity, the plaintiff and her daughter, now of age, entered into an agreement with the nieces and nephews of the testator and the remaindermen named in the will, by which they agreed to partition the estate as though the life estate had fallen in, and by mutual deeds from the parties place the fee to the lands in the several parties entitled thereto, and the objects of the testator's bounty, including the personal property amounting to about $50,000, now in the hands of the trustee. The testimony works out a clear case for equitable relief.

After reading the will carefully and ascertaining the intention of the testator, the desire on his part to provide for his mother, sister, and child, that, after making adequate provisions for his daughter and such child or children as she might have living at her death, his mind and heart naturally turned to the nieces and nephew with whom he had been so intimately associated, and it was certainly his desire to leave them something substantial and not a mere shadow. In ariving at the intention of the testator, the entire scope of the will, the language used, the circumstances surrounding him, and the objects of his bounty, under the decisions of our Supreme Court must be taken into consideration.

"In a will of the testator, the intention governs regardless of any arbitrary rule of law." *Seiman v. Robertson,* 46 S. C., 264; 24 S. E., 187.

In th ecase of *Logan v. Cassidy* (which is very similar to the case at bar) 71 S. C., 178; 50 S. E., 794, the word "issue" was held to mean "children" under all the circumstances of the case.

A different rule of construction applies where the word is used in a will to that which is applied where it is used in a deed or other conveyance.

In New York it was held that in construing a will the word "issue" should ordinarily be held to mean "children," to the exclusion of descendants of children, and especially when the term is used correlatively to that of parent. *Murray v. Bronson,* 1 Dem. Sur. (N. Y.), 217. *Taft v. Taft,* 3 Dem. Sur. (N. Y.), 86.

At the time of the execution of this will Margaret Trimmier, the daughter, was unmarried and quite young, and under the tutelage of her grandmother and aunt. It *is* significant that the remainder was to such of the issue of Margaret as may be living at the time of her death. If the testator had intended that all the descendants, however remote, should share in the estate, he would no doubt have used the words "and after her death to her issue in fee simple"; the word "issue" being used in correlation with the mean "children" alone. Moreover the testator could not the New York Court applies, and hence it should be held to mean "children" alone. Moreover the testator could not have had in mind the grandchildren of his daughter Margaret as the objects of his bounty; * * *   that would be looking entirely too far ahead and too remote and unnatural. I do not see how I could indulge the presumption that the testator intended these remote descendants as remaindermen in preference to those who were in *esse,* his nieces and nephew, and to whom he occupied the relation of a parent. The will was evidently drawn by a lawyer and for this rea-

son a great deal of significance attaches to the use of the words "such of her issue as may be living at the time of her death." If it should be held that these words mean "issue" in the general and unrestricted sense, then the draughtsman would be guilty of the offense of using unnecessarily prolix language where two words, namely, "her issue," would have sufficed. I am therefore convinced, after careful consideration of the matter, that it was the clear intention of the testator when he used the word "issue" in his will he intended it to mean "children" and I so hold. To hold that the term "issue" would include grandchildren of the plaintiff, as well as children, would do nothing more than maintain the estate in its present hopeless condition, resulting ultimately in the loss of all the property to the beneficiaries of the testator's bounty and thus defeat his desires. The agreement between the beneficiaries of the testator's will is fair and an honest distribution of the estate, giving to all persons whom it was evident he had in mind a present enjoyment, and excluding only such persons as he could not have desired to be the objects of his bounty, to the exclusion of those to whom he stood in *loco parentis.* I am bound to so hold under the testimony and the law.

It is therefore ordered and decreed that the exceptions to the Master's report as to the construction of the will be sustained, and that the report of the Master, so far as the same conflicts with the decree, be, and the same is hereby, reversed. It is further ordered and decreed that the agreement entered into by and among the parties to this action be confirmed and made a part of this decree, and that the Master of this Court be and he is hereby required and authorized to execute the proper deeds of conveyance to the several parties, in order to carry out the terms and conditions of said agreement and specifically set forth therein. It is further ordered and decreed, that the personal property now in the hands of the Colonial Trust Company shall, after a proper accounting has been made therefor by the

said Colonial Trust Company, be turned over to the plaintiff, Margaret V. Mitchell, and the defendant Margaret F. Mitchell, who shall execute to the Colonial Trust Company proper receipts therefor, which receipts shall operate as a full release and discharge fo the said corporation from further liability.

Having reached these conclusions, it is unnecessary to consider the second cause of action set forth in the complaint, which asks for relief by selling the unimproved property belonging to the estate. It is further ordered that this decree be left open, and that any party to this suit may apply at the foot thereof for any orders that may be necessary to carry out this decree and to do equity between all the parties interested under the terms of the will.

Item I of the will of F. M. Trimmier, referred to in the opinion of Mr. Justice Cothran, follows:

Item I. All the real estate and all and every interest in real estate, of which I may die seized and possessed or entitled to, I give and devise to my mother, Margaret H. Thimmier, for and during the term of her natural life, and after her death then to my sister Margaret L. Trimmier, for and during the term of her natural life, and after her death then to my daughter, Margaret Trimmier, for and during the term of her natural life, and after her death then to such issue of my said daughter Maragret as may be living when my said daughter dies, to the said issue and their heirs forever. But if my said daughter should die without leaving issue her surviving, I give and devise all the said real estate and interest in real estate, upon the death of all the life tenants above mentioned, to my nieces and nephew, Betty Trimmier, Alta C. Trimmier, Bell Darden, Lizzie McCarley, Thomas R. Trimmier, and Mollie Trimmier, share and share alike; that is to say, one-sixth to each of them and their heirs forever.

*Messrs. Brown & Boyd,* for Margaret F. Mitchell, appellant, cite: *Construction of "issue"* 1 Strob. Eq., 344; 83

S. C., 268; 28 S. C., 495; 105 S. C., 179; 10 S. C., 414; "Children" 25 S. C., 358.    *Technical words must be given technical meaning:*    101 S. C., 107; 104 S. C., 445.    *Rights of contingent remainderman not in esse may be adjudged:* 2 Rich. Eq., 322; 3 Rich. Eq., 1; 76 S. C., 156; 80 S. C., 83.    *Court should not destroy trusts and defeat right of contingent remainderman:*    101 S. C., 1.

*Messrs. Perrin & Tinsley,* for certain respondents, cite: *Intention of will governs:*    46 S. C., 264.    *When "issue" may mean "Children,"* 71 S. C., 180.

August 8, 1924.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree of his Honor, Judge Mauldin, which fully sets forth the object of the suit, and should be reported. '

The exceptions raise two questions: First, under the terms of the will, can the word "issue" be construed to mean children, so as to vest a present title?    Can the estate be distributed under the will prior to the falling in of the life estate?

If we hold under the terms of the will that the word "issue" means children, then the agreement between the respondent and appellant is good, and the Circuit decree should be affirmed.    If we hold otherwise, the agreement is good and binding only between the parties who made it. Yet, if Margaret F. Mitchell should have children they will be remaindermen, and the agreement of parties would be defeated, if Margaret F. Mitchell had children and survived her mother, Margaret V. Mitchell.

In order to defeat the agreement in any view of the case, Margaret F. Mitchell must have children.    I am decidedly of the opinion that, from the language of the will and the facts surrounding the testator at the time of the execution of his will, it does not clearly appear that the word "issue" is to be construed in its technical meaning, but think that his

Honor properly construed the word "issue" to mean children. The testator was not thinking of his remote descendants as remaindermen, in preferecne to those who were then in *esse.* He provided for his mother, sister, and daughter, and if his daughter had a child or children living at the time of his daughter's death, the property went to her. He never had in mind contemplated the property to be tied up further than his grandchildren. His intent from the whole will was to give his property to his grandchildren, provided there were any living at the date of his daughter's death.

Under *Selman v. Robertson,* 46 S. C., 264; 24 S. E., 187, quoted by his Honor in his decree, in a will of the testor the intention governs, regardless of any arbitory rule of law. We agree further with the Circuit Judge in his quotation of *Logan v. Cassidy,* 71 S. C., 180; 50 S. E., 794, where the word "issue," as used, meant "children"; the facts of this case and of *Logan v. Cassidy, supra,* being somewhat similar.

The testator occupied the position of parent towards his nieces and nephews; they were his adopted children; he had always looked after them and taken car of them; and it was clearly his intention when he made his will to look out and care for those who were near and dear to him—his mother, sister, daughter, and such child or children as his daughter might have, and his nieces and nephews. It was not his intention to look forward and take care of his great grandchildren, should he have any. He did not intend to tie up the property further than a grandchild. His clear intent by his will was to give the whole estate to his grandchild or children, absolutely, should there be any living at the time of his daughter's death.

Under conditions that exist now, this large estate practically produces no income. The past-due taxes are over $16,000, and growing larger each year. The life tenant is hard up all the time; no income and practically "starving,

as it were, in a land of plenty." Large bodies of land produce no income; a valuable lot of property unimproved; the storehouses renting for practically nothing, for want of money to repair the same; tax executions issued and the progress of a live city impeded by reason of unimproved property lying within the same; no one capable of selling the real estate; the object of the testator defeated, when he thought, under his will, the objects of his bounty would be benefited.

Here we have his estate practically wrecked, unless we affirm the judgment of the Circuit Court. By doing so the debts can be paid and a considerable estate left for the beneficiaries under his will and the objects of his bounty. The judgment of the Circuit Court should be affirmed, as his conslusions of fact are in accordance with the testimony in the case; and upon the facts found, his conclusions of law are correct.

Under the decisions of this Court, from *Bofil v. Fisher,* 3 Rich. Eq., 1; 55 Am. Dec., 627, to the present time, the lands may be sold debts paid, but the interests of the parties vested and contingent are transferred to the fund. I think it better for all parties that the judgment of the Circuit Court should be confirmed and the settlement stand. F. M. Trimmier died in 1888 If the doctrine of *Bofil v. Fisher* had been carried out at the time of his death, or a few years after, I doubt that the propery he died seized and possessed of, with accumulated interest theron, would amount to the present value of his estate. From the date of his death to the present time, real estate situated as his has gone up in leaps and bounds. It is the history of all real estate in this State that it may fluctuate in value from year to year, yet at the end of each 10 years all of it has increased in value considerably. Trimmier has been dead nearly 36 years, and the difference in the value of his real estate at the time of his death and the present time is enormous.

The application of *Bofil v. Fisher* to this estate at the time of his death would have been detrimental to his estate and would have worked a loss.

The agreement between the appellant and respondents is good and binding. All parties are bound by it, and should a majority of this Court hold that the word "issue" in the will does not mean children, but is to be construed in its technical sense, and that the great-grandchildren of F. M. Trimmier (if any) are the contingent remaindermen, under his will, and are to finally receive the estate, then enough should be sold to pay the debts and put each party in possession of the parts that they have agreed upon until the time comes, finally, when it shall be determined who gets the estate, or all the property sold, the debts paid, and the whole, after that time, reinvested, and from the proceeds of that sale, after being reinvested from the funds derived from the sale of that property, agreed upon in the partition agreement. The fund brought in from the part assigned the Mitchells that the income from that fund be paid to Margaret V. Mitchell and the fund brought in from the sale of the property to other respondents, the income derived therefrom be paid over to them according to their respective rights therein, until it be finally determined whether there are any contingent remaindermen. The agreement between the appellant and respondents is good, binding, and valid; and in any view of the case can only be defeated by Margaret F. Mitchell having children, and if majority of the Court decide that the word "issue," being a technical word, must have its technical meaning.

I think the exceptions should be overruled, and the judgment affirmed.

MESSRS. JUSTICES COTHRAN and MARION concur.

MR. JUSTICE FRASER dissents.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE COTHRAN (concurring): I concur in the opinion of Mr. Justice Watts upon the grounds which I shall present.

The object of this action is to confirm an agreement entered into by Margaret V. Mitchell and other devisees under the will of F. M. Trimmier, the agreement providing for a partition of the real estate of which he died seixed and possessed. The question involved is whether or not the will created contingent remainders in the unborn great-grandchildren of the testator. The matter is quite complicated, and is made more confusing by the similarity in the names of certain beneficiaries under the will.

F. M. Trimmier was never married, but was the father of an illegitimate child whose name was Margaret V. Trimmier. She was taken into his family, which consisted at the time the will was executed of his mother, Margaret H., a sister Margaret L., and certain nephews and nieces of two deceased brothers, William and Theodore. At that time the daughter was about 17 years of age. She afterwards married one Mitchell, by whom she had one daughter, whose name is Margaret F. She has lately married. There appear in this matter the mother, Margaret H., the sister Margaret L., the daughter Margaret V., and her daughter Margaret F. To avoid confusion, they will be referred to as the mother, the sister, the daughter, and the grand-daughter.

The questions involved turn upon the construction of item I of the will of F. M. Trimmier, which will be reported. The real estate consists of nearly 2,000 acres of farm land, and quite a large amount of city property in Spartanburg. The testator died in 1888, and at some time recently (the date does not appear in the record) an agreement was executed by the daughter, the granddaughter, and the contingent remaindermen, by which certain of the real estate was apportioned to the contingent remaindermen and the balance of it to the daughter and granddaughter, in fee-

simple, discharged of all conditions imposed by the will; each branch of the family, the daughter and granddaughter on the one side, and the nephews and nieces on the other, relinquishing their claims reciprocally to the real estate apportioned to the other.

It is manifest that the completeness of this arrangement, its effectiveness in passing title to the several apportionments, depends upon the question whether or not the will created contingent remaindermen in the issue of the granddaughter. The agreement is perfectly valid, of course, between the parties, so far as their individual interests, present or prospective, are concerned, but it is apparent that if contingent remainders are created in favor of the issue of the granddaughter, in the event that she should predecease the daughter, leaving issue, a deed from the granddaughter at this time would not convey a perfect title, and the same infirmity would exist in the title of the nephews and nieces to the property apportioned to them by the agreement.

The property is devised to the mother for life; at her death to the sister for life; at her death to the daughter for life; at her death to such issue of the daughter as may be living at the time of her death, to said issue and their heirs forever; with remainder over on default of issue to the nephews and nieces. Assume a condition that is entirely possible. The granddaughter dies before the daughter, her mother, leaving children. Upon the death of the daughter, the granddaughter having predeceased her, leaving children, would the children so surviving be entitled to the property as the issue of the daughter? This depends upon whether the word "issue" is to be construed in its technical sense, or as "children," so that the limitation would read: To the mother for life, at her death to the sister for life, at her death to the daughter for life, and at her death to such of her children as may be living at the time of her death in fee.

It is much safer, and tends more to the stability of the law, that in the construction of written instruments the

words used should be given their accepted legal interpretation, rather than to wander into the domain of conjecture as to the maker's intentions, unless that interpretation is controlled by the clearest expression of the intention, contained in the instrument. See the very pertinent quotation from the case of *Carr v. Porter,* 1 McCord Eq., 71, in the concurring opinion of Mr. Justice Fraser in *Strother v. Folk,* 123 S. C., 127; 115 S. E., 605.

I consider it as settled, in this State, that when a testator uses technical terms throughout a will, the Court has not the power to and will not undertake to substitute other words for them, or to disregard their legal effect, or to adopt their popular instead of their legal meaning, unless impelled to do so by expressions contained in the limiting clause, or elsewhere within the four corners of the will. *Smith v. Hilliard,* 3 Strob. Eq., 211.

It is equally true that if from superaded expressions, or from the context, or from other parts of the will, it is manifest that the testator used the term "issue" as synonymous with "children," or intended to *describe a class of persons to take at a particular time,* "issue" will be construed as "children." *McLure v. Young,* 3 Rich. Eq., 559.

I think that it is clear, even if it cannot be said that the testator intended to use the word "issue" in the sense of "children," he certainly intended what is the legal effect of the limitation, whether he intended it or not, to describe a class of persons to take at a particular time, which constituted them purchasers. The granddaughter, therefore, took a contingent remainder in fee; a deed from the daughter of her life estate, and of the granddaughter of her remainder in fee, carries a good title, under the agreement, to the other contingent remaindermen, the nephews, and nieces, and a deed from the latter to the former has the same effect. The authorities cited by the writer in his dissenting opinion in the case of *Strother v. Folk, supra,* are conclusive upon this question.

I think, therefore, that the decree of his Honor, Judge Mauldin, should be affirmed.

MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE MARION (concurring) : I have grave doubt as to whether the word "issue" as used in the will of F. M. Trimmier may soundly be construed to mean *children* or a *class of persons to take at a particular time.* I think from the text of the will as a whole, however, the intent of the testator as to the sense in which the word was used may reasonably be regarded as doubtful. If so, it is proper to take into consideration the circustances under which the will was executed, including the condition, nature, and ex tent of the testator's property and his relations to his family and to the beneficiaries named in the will; and "even the motives which may reasonably be supposed to operate with him and influence him in the disposition of his property are entitled to consideration in ascertaining the meaning of the testator." 28 R. C. L., 272, § 244. *Smith v. Bell,* 6 Pet., 68 (8 U. S.), 8 L. Ed., 322. In the light of the circumstances of this particular case—which may properly be considered in the view indicated—I have decided to resolve my doubts in favor of the affirmance of the Circuit decree.

I therefore concur in the opinions of Justices Watts and Cothran.

MR. JUSTICE FRASER (dissenting) : I cannot concur in the opinion of Mr. Justice Watts.

F. M. Trimmier had one child, Margaret V. Trimmier, now Margaret Mitchell. His mother and sister lived with him and took care of his little daughter, who was at the time of his death, not only unmarried, but quite young. Margaret V. afterward married a man named Mitchell. She had one child, Margaret F., who has recently married. Several nieces and nephews of F. M. Trimmier were also living with him. To these nieces and nephews he was very kind, and he was very fond of them.

Mr. Trimmier's will provided as follows:

"Item I.    All the real estate and all and every interest in real estate, of which I may die seized and possessed or entitled to, I give and devise to my mother, Margaret H. Trimmier, for and during the term of her natural life, and after her death then to my sister, Margaret L. Trimmier, for and during the term of her natural life, and after her death then to my daughter, Margaret Trimmier, for and during the term of her natural life, and after her death then to such issue of my said daughter Margaret as may be living when my said daughter dies, to the said issue and their heirs forever.    But if my said daughter should die without leaving issue her surviving, I give and devise all the said real estate and interest in real estate, upon the death of all the life tenants above mentioned, to my nieces and nephew. Betty Trimmier, Alta C. Trimmier, Bell Darden, Lizzie McCarley, Thomas R. Trimmier, and Mollie Trimmier, share and share alike; that is to say, one-sixth to each of them and their heirs forever."

The question in the case is:    Does the word "issue" mean "children"?    The word "issue" does not ordinarily mean "cihldren," and as said in the opinion of Mr. Justice Watts, if it is to be so construed, the intention of the testator must be clear.    To my mind it is perfectly clear that such a construction was not the intention.    A parent owes a duty to his own child, some more than others.    Mr. Trimmier owed a supreme duty to his motherless child.    The will shows wisdom as well as a just appreciation of his obligation.    He owned a duty to his mother and sister who, in addition to the ordinary relation, had been kind to this very daughter, and had served her faithfully.    It was dangerous to give his property to his little daughter absolutely, and allow her in the unwisdom and indiscretion of youth to squander it or lose it.    The will gives a life estate to his mother and then to his sister, who had served his child, and therefore could be relied upon to take care of her.    It might be that Mar-

garet V. still might come too soon into the possession of the property, so he gives her a life estate only, with remainder to her "issue." If Margaret V. had at that time a child or children, it might well be said that the wellknown tender love a grandfather feels for his grandchildren impelled him to give a fee in remainder to those grandchildren; but there were no grandchildren at that time. The testator, by the strict and legal terms of his will, certainly provided for Margaret F., whom he did not know. Then why not for the *issue* of Margaret F.?

Margaret V. was a child and might not live, or living might not marry; but even if she should marry, she might die without issue. The contingency was provided for by a contingent remainder to his nieces and nephews, and he named them.

Margaret F. has recently married and issue is to be expected. There is a danger ahead for Margaret F. It is not improbable that within the course of two years there may be issue of Margaret F., who, under the clear terms of the will of its great-grandfather will be entitled to a handsome property, will be put on the world without a dollar.

*Bofil v. Fisher,* 3 Rich. Eq., 1; 55 Am. Dec., 627, does provide for a sale of property and bars contingent remaindermen not in *esse,* but it also provides for a transfer of the interest to the fund. Mr. Trimmier was clerk of the Court for years and, it may be supposed, had some knowledge of the use of the word "issue," and of the power of the Court to allow a sale for reinvestment. The only hardship to the parties is of their own making. The way is open for a sale for reinvestment in income-bearing property. If these people are willing to live in debt and want for the balance of their lives, it is their own fault. The door is open; the way is clear. It would be exceedingly awkward if, in the course of a few years, a child should come into Court and

ask for a very large estate left to it by its ancestor, and it shall be necessary to turn it out of Court in poverty.

For these reasons. I dissent.