## 17500

John WOODLE, Lawrence Woodle, Mitchell Woodle, Marvin Woodle, Mattie W. Cherry, Nellie W. Haselden and Ethel W. Squires, Respondents, v. H. L. TILGHMAN, Jr. and Anne T. Boyce, Appellants.

(107 S. E. (2d) 4)

*C. W. Derrick, Esq.,* of Marion, *for Appellants,*

*Messrs. McLaurin & McLaurin,* of Dillon, *for Respond-ents,*

February 10, 1959.

OXNER, Justice.

The question presented is whether Della Moneyham acquired a fee conditional estate under the following Item in the will of Araline Moneyham:

"Item 5th. I give and devise to Della Moneyham (now about 15 years of age) for life only and then unto the lawful issue of her body, and if she should die without children then to Robert Harper's children, share and share alike all that tract of the James Godbolt land North of a line run by J. B. White, Surveyor, during the year 1887 from Great Pee Dee River in the direction of Bear Swamp."

In other items of the will the testatrix devised a tract of land to "Dr. J. E. Jannigan, his heirs and assigns", and another tract to Robert Harper "for life only, and then to the lawful issue of his body." After disposing of certain personal property, she directed that the residue of her estate be divided equally between Robert Harper and Della Moneyham. She appointed Dr. J. E. Jannigan guardian of Della Moneyham and directed that during her minority or until her marriage he "look after" the property given to her.

The will was executed on January 31, 1889 and the testatrix died the same year. The record does not disclose her family connections. We, therefore, do not know what relation she bore to the devisee Della Moneyham or to the others named in her will.

Della Moneyham married a Woodle. She died in 1933, survived by seven children who are respondents on this appeal. In 1903, after the birth of several children, she sold the tract of land mentioned in Item 5 to one Philip C. Dew and undertook to convey to him fee simple title. After divers mesnes conveyances, the property was sold and conveyed to appellants. In some of these deeds there was a general warranty and in others a limited warranty.

Respondents contend that under Item 5, Della Moneyham (Woodle) acquired only a life estate with remainder to her children in fee, who now have fee simple title to this tract of land. Appellants claim that Della Moneyham (Woodle) acquired an estate in fee conditional and after the birth of a child could, and did, convey good fee simple title which through divers conveyances is now vested in them. The Court below held that Della Moneyham (Woodle) only acquired a life estate under Item 5 with remainder in fee to her children and that the respondents are now entitled to possession of the property.

It will be noted that the testatrix died long before the rule in *Shelley's case* was abolished in 1924. 33 St. 1140, Section 57-2 of the 1952 Code. The enactment of this legislation was prompted by the fact, generally recognized in all of our decisions, that the application of the rule frequently defeated the intention of the testator. As pointed out in *McLure v. Young,* 3 Rich. Eq. 559, "It is a rule of tenure, which is not only independent of, but generally operates to subvert, the intention." In *Hull v. Hull,* 2 Strob. Eq. 174, the Court said: "The rule is a rule of property, and not of construction: that is, if the terms of the instrument make a case which falls within its operation, it will operate notwithstanding a persuasion may exist that such was not the intention of the grantor or testator. The general intention of the law must prevail over his particular intention." While the rule has been criticized by some of our ablest Judges (see opinion of Judge O'Neall in *Buist v. Dawes,* 4 Rich. Eq. 421) and followed at times with reluctance, it has been consistently applied where apt words were used to create a fee conditional estate. But our many decisions on the subject illustrate the difficulty frequently encountered in determining in a particular case whether the words used demanded application of the rule. All the cases cannot be reconciled. As stated in *McLure v. Young, supra,* "There seems to have prevailed an unceasing conflict between the obligation to observe a technical rule and a solicitude not to defeat the obvious intention of the testator."

The initial inquiry in a case of this kind is the intention of the testator, for the rule in *Shelley's case* "is not properly a matter to be considered until the meaning of the instrument has been ascertained under the rules of construction. When the intention of the grantor or devisor has been ascertained under the ordinary rules of construction, then the question properly arises, does that intention violate the rule of law in *Shelley's case?" Duckett v. Butler,* 67 S. C. 130, 45 S. E. 137. To the same effect, see *First Carolinas Joint Stock Land Bank of Columbia v. Ford,* 177 S. C. 40, 180 S. E. 562, and *First Carolinas Joint Stock Land Bank v. Deschamps,* 171 S. C. 466, 172 S. E. 622.

We, therefore, proceed to determine the intention of the testatrix by the language used in Item 5 of her will. The devise is to Della Moneyham "for life only and then unto the lawful issue of her body, and if she should die without children then to Robert Harper's children, share and share alike." It is conceded that the words, "for life only and then unto the lawful issue of her body", standing alone would have created a fee conditional estate. The storm center of this controversy is as to the effect of the superadded words "if she should die without children" upon the meaning of the term "lawful issue." Respondents contend that the word "issue" should be construed as synonymous with "children", and was used to indicate a new stock of inheritance.

While it has been stated that the word "issue" is not as strong as a word of limitation as the words "heirs of the body", *Whitworth v. Stuckey,* 1 Rich. Eq. 404; *McIntyre v. McIntyre,* 16 S. C. 290; *Adams v. Verner,* 102 S. C. 7, 86 S. E. 211, the former without qualification will be generally construed to have the same import as the words "heirs of the body." *Lucas v. Shumpert,* 192 S. C. 208, 6 S. E. (2d) 17, 19. The two terms are generally regarded as equivalent in a will. *Rembert v. Vetoe,* 89 S. C. 198, 71 S. E. 219, 2 A. L. R. 918. In *Lucas v. Shumpert, supra,* the Court said: "As used in a will, designating beneficiaries, the word 'issue' is ordinarily a word of limitation and not of purchase, and has for

its primary or general meaning 'heirs of the body', or lineal descendants generally. * * * And there is always a strong legal presumption that these words, or equivalent expressions, have been used in their technical sense as denoting the whole of the indefinite line of inheritable succession. They will not otherwise be construed unless it manifestly appears that such was the intent of the testator." In *Dixon v. Pendleton*, 90 S. C. 8, 72 S. E. 501, 502, 2 A. L. R. 915, the Court said: "The words 'child,' 'son,' 'daughter,' are the common words in which men think and speak of their immediate offspring, and, when the word 'issue' is used either in thought or expression, it almost invariably denotes an intention to. include not only children, but other lineal descendants. Hence issue should ·not be held to mean children unless the context clearly indicates that restricted meaning." In *Holman v. Wesner*, 67 S. C. 307, 45 S. E. 206, we find the following: "The words 'issues of the body,' like 'heirs of the body,' mean all lineal descendants to the remotest posterity, and are words of inheritance, and not of purchase, unless the instrument shows they were used in a restricted sense, as to indicate 'children.' "

While issue is generally regarded as a word of limitation, it may be used as a word of purchase. It is always open to inquiry whether the testator used the word "heirs" or "issue" according to its strict and proper acceptation, or in the more inaccurate sense to denote "children". *Duckett v. Butler*, 67 S. C. 130, 45 S. E. 137. If from superadded expressions, or from the context, or from other parts of the will, it is manifest that the testator used the term "issue" as synonymous with "children", or intended to describe a class of persons to take· at a particular time, issue will be construed as a word of purchase, and not of limitation. *McLure v. Young, supra,* 3 Rich. Eq. 559; *Rowe v. Moore,* 89 S. C. 561, 72 S. E. 468; *Guy v. Osborne,* 91 S. C. 291, 74 S. E. 617; *Mitchell v. Mitchell,* 129 S. C. 321, 123 S. E. 854. Conversely, the word "children", which is primarily a word of purchase and not

of limitation, is sometimes used in the sense of "heirs" or "heirs of the body", or "issue" and when so used will be construed as a word of limitation in order to carry into effect the intention of the testator *Dillard v. Yarboro,* 77 S. C. 227, 57 S. E. 841; *Simpson v. Antley,* 137 S. C. 380, 135 S. E. 469; *Hutto v. Ray,* 192 S. C. 364, 6 S. E. (2d) 747.

Reverting now to the devise under consideration, it is conceded, as it must be, that if the superadded words be disregarded and the devise considered only as one to Della Moneyham "for life only and then unto the lawful issue of her body", the rule in *Shelley's case* would apply. While the question is a close one, we do not think the superadded words are sufficient to overcome the strong presumption that the word "issue" was used in its technical sense as denoting the whole of the indefinite line of inheritable succession. We cannot say that it manifestly appears that the testatrix intended to use the word "issue" as meaning children. It is our view that the superadded words are equally, if not more, susceptible to the construction that the testatrix intended that the limitation over was to be effective in the event of Della Moneyham dying "without issue." In other words, we think the more reasonable construction is that "children" was used as synonymous with "issue" and not "issue" as synonymous with "children." As to the various meanings of the words "child" or "children" when used in a will, see annotation in 104 A. L. R., page 282. Not to be overlooked is the fact that when the will was executed, Della Monneyham, a girl then only fifteen years of age, had no children. Respondents' proposed construction would exclude any grandchildren. Suppose all of the respondents had predeceased their mother leaving children. Could it have been the intention of the testatrix to exclude such grandchildren? We think not. To be added to the foregoing is the fact that the testatrix in other parts of the will used technical words in their technical sense as shown by the devises to Dr. Jannigan and Robert Harper. The devise to Robert Harper clearly created a fee conditional estate. Did she in-

tend to give Della Moneyham a different estate? We think not.

Having concluded that the word "issue" was used in its technical sense and the words "without children" in the limitation over as meaning the death of Della Moneyham "without issue", it is clear that the rule in Shelley's case applies. *Whitworth v. Stuckey, supra,* 1 Rich. Eq. 404; *Federal Land Bank of Columbia v. Wells,* 172 S. C. 1, 172 S. E. 707. In *Hull v. Hull,* 2 Strob. Eq., 174, it was held that a daughter took a fee conditional under a devise to her for life and "upon her death, then the said property is to go to the heirs of her body, if any, or should she die without issue" over. In *Surles v. McLaurin,* 94 S. C. 308, 77 S. E. 944, it was held that a devise to a son "for and during the term of his natural life, and then to the heirs of his body; but should he leave no such heirs, then the same shall be equally divided among my other heirs" gave the son a fee conditional estate.

In *Holman v. Wesner, supra,* 67 S. C. 307, 45 S. E. 206 there was a conveyance by a father to his son John Lewis Haigler "during his life, and after his death to the lawful begotten issues of his body and should the said John Lewis Haigler die without leaving such issues, as above, or should his issues, as above, die without leaving lawful issues, then the said lands to return to my children or their lawful issues." In construing this as creating a fee conditional, the Court said: "The superadded words, 'or should *his issues, as above,* die without leaving lawful issues,' etc., do not necessarily indicate that the grantor intended to use the words 'issues of the body' in a restricted sense, but, on the contrary, show that the grantor contemplated a limitation over only upon extinction of the lineal descendants of John Lewis Haigler to the remotest generation. The words 'issues of the body' in this deed can only be construed as denoting an indefinite succession of lineal descendants who are to take by inheritance."

In *Davis v. Strauss,* 173 S. C. 99, 174 S. E. 908, the Court had under consideration a deed conveying land by a mother to her son "for a period of his natural life, and from and after his death to his issue, and should any of his children predecease him the children of a predeceased child shall take together the share to which the parent would have been entitled if living; to such issue as aforesaid, and their heirs and assigns forever." It was held that the rule in Shelley's case applied and the son took a fee conditional estate.

It is not surprising that we have found no case construing a devise exactly like the one under consideration, for it has been aptly said that "no will has a twin." Perhaps the closest case on the facts is *Strother v. Folk,* 123 S. C. 127, 115 S. E. 605. It was there held that the following provision in a will gave Julia Ann Long a fee conditional under the rule in Shelley's case, and not merely a life estate with remainder over:

"It is also my will and desire that all the property both real and which I have willed and bequeathed to said Julia Ann Long or which may accrue to her under said will and testament shall be and remain to her during her natural life and to descend to the heirs of her body, and if she the said Julia Ann Long should die without issue or children of her body the said property to return to my son, Moses Long."

The *en banc* Court was closely divided. A minority thought that Julia Ann took only a life estate with remainder at her death to her children. They reasoned that the term "without issue" was intended to take care of the children of any child who predeceased the life tenant. The following construction was proposed in the dissenting opinion: "If at the time of the death of Julia Ann there be living children, they shall take the remainder in fee; if there should be children of a predeceased child, they being the issue of the life tenant, though strictly not children, they shall take; the period of distribution being fixed as at the death of the life tenant. If, therefore, it can be said that the clause fixed a

definite period for the devolution of the estate upon the classified remaindermen, it cannot be deemed as establishing a contingency so remote as indicating an indefinite failure of issue."

The strong dissenting opinion of Mr. Justice Cothran fully sustains every position taken by respondents in the instant case but a majority of the Court took a different view. We do not think the case can be distinguished in principle. It is true that the testator in the *Strother case* died prior to the Act of 1853 now embodied in Section 57-3 of the 1952 Code, but it is well established that this act did not abolish the rule in Shelley's case. *Bethea v. Bethea,* 48 S. C. 440, 26 S. E. 716.

The case of *Cureton v. Little,* 119 S. C. 31, 111 S. E. 803, tends to sustain our conclusion. The testator there devised to each of three children certain land "during his natural life and afterwards to his bodily heirs." The Court held this created a fee conditional estate notwithstanding the fact that in a later item in the will the testator provided for a reversion "if any one of my children should die without living children" and in still another item created a limitation over in the event "all my children should die without heirs."

Somewhat to the same effect is *Bonds v. Hutchison,* 199 S. C. 197, 18 S. E. (2d) 661, 662. The devise in controversy there, Section 5 of the will, was to a son, Charley B. Hutchison "to be his property during his natural life. If he dies without bodily heirs, the same to revert back to and become the property of my estate and to be disposed of as set forth in the last clause of Section 2 of this my last will and testament." The last clause of Section 2 of said will provided: " * * * In case any of them die without children, then such share is to revert back to, and become a part of my estate and is to be equally divided between my surviving children upon the same terms and conditions expressed above." The Court, in holding that Section 5 cre-

ated a fee conditional estate which was not modified or altered by Section 2, said:

"By the last clause of Section 2, the testator directs a disposition in the event 'any of them die without *children.'* (Italics added.) But the use of the word 'children' in this clause does not alter the former limitation, if its use is consistent with the testator's intention to create a fee conditional estate in the devisee, Charley B. Hutchison. The word 'children' is generally and ordinarily a word of purchase but may be used as a word of limitation in construing the terms of a will in order to ascertain the intention of the testator."

We have not overlooked *Green v. Green,* 210 S. C. 391, 42 S. E. (2d) 884, which to some extent tends to sustain respondents' view. But we do not think the Court in that case intended to modify or overrule the other decisions herein reviewed.

In conclusion, the writer desires to say that were we not restricted by our decisions, he would be inclined to reach a different conclusion in this case but it is essential that there be stability in the law relating to real property.

It follows from our construction that after the birth of issue Della Moneyham (Woodle) was empowered to convey good fee simple title which through successive conveyances is now vested in appellants.

Reversed.

STUKES C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.