## 24304

Crandall Close BOWLES, Frances Close Hart, Leroy Springs Close, Patricia Close, Elliott Springs Close, Hugh William Close, Jr., Derick Springsteen Close, and Katherine Ann Close, Respondents v. James BRADLEY and James H. Hodges as Trustees, et al., Defendants, of whom, Brooks P. Goldsmith, Guardian ad litem, is Appellant. Crandall Close BOWLES, Frances Close Hart, Leroy Springs Close, Patricia Close, Elliott Springs Close, Hugh William Close, Jr. and Derick Springsteen Close, Respondents v. Anne Springs CLOSE, James Bradley, Frances Close Hart, Leroy Springs Close, Patricia Close, Elliott Springs Close, Hugh William Close, Jr., and Derick Springsteen Close, as Trustee, et al, Defendants, of whom, Brooks P. Goldsmith, Guardian ad litem, is Appellant. Crandall Close BOWLES, Frances Close Hart, Leroy Springs Close, Patricia Close, Elliott Springs Close, Hugh William Close, Jr., Derick Springsteen Close, and Katherine Anne Close, Respondents v. Anne Springs CLOSE and James Bradley as Trustees, et al., Defendants, of whom Brooks P. Goldsmith, Guardian ad litem, is Appellant.*

(461 S.E. (2d) 811)

Supreme Court

---

*The full caption of these appeals is available in the office of the Clerk of the Supreme Court of S.C.

*Brooks P. Goldsmith,* Lancaster, *for appellant.*

*James C. Hardin, III* and *Daniel J. Ballou,* both of *Kennedy, Covington, Lobdell & Hickman,* Rock Hill, *for respondents.*

*Robert K. Folks,* Lancaster, *guardian ad litem, for respondents.*

Heard May 4, 1995.

Filed August 28, 1995.

TOAL, Justice:

This case concerns the construction of the word "issue" as used in several wills and trusts executed in the 1950s and 1960s. We affirm the circuit court's holding that the term "issue" includes adopted children.

## FACTS

On August 1, 1959, Elliott White Springs (Springs) created an irrevocable trust (the 1959 Trust or the trust). The terms of this trust provided that the income from the trust would be paid to an eleemosynary corporation for a certain number of years, after which the trust corpus would be split to form individual trusts for seven of his grandchildren. Each of the grandchildren would receive the income form his or her trust for life. At a grandchild's death, the corpus of his or her trust would be distributed

> to such of said grandchild's *issue* as said grandchild shall by Will have appointed, and, in the absence of appointment, *per stirpes*, to the surviving *issue* of said grandchild, and if there be no such *issue*, then *per stirpes*, to the surviving *issue* of Anne Springs Close. (Italics added.)

On August 30, 1959, Springs executed a will (the Springs Will or the will) creating similar trusts for his grandchildren. The provisions concerning the term "issue" are virtually identical in the special powers of appointment and takers in default provisions.

In the course of preparing the Springs Will and the 1959 Trust, several memoranda were written by Springs's lawyers. One memorandum to Springs proposed that "issue" expressly be defined in the trust to include adopted children. Another memorandum, also addressed to Springs, referred to a conversation between Springs and the lawyer and stated that the term "issue," as used in the proposed trust, did not include adopted children.

Spring died in October 1959 and was survived by his wife Frances Ley Springs (Frances), his daughter Anne Springs Close (Anne), and six grandchildren. Anne was pregnant with Springs's seventh grandchild, for whom Springs had provided in his will as well as in the separate trust he executed. Anne later had an eighth child, Katherine.

In the 1960s both Frances and Anne created several trusts (collectively, the subsequent instruments) similar to the trust Springs himself created: the income from these trusts was to be paid to specific charities for a term of years, after which the trust property was to be split into separate trusts for each of Anne's children. During their lives, Anne's children receive

the income from these trusts. Each child is then allowed to appoint by will one or more of his "issue" to receive the trust corpus. In the absence of the exercise of the power of appointment, the trust corpus is to be distributed *per stirpes* to the child's "surviving issue." The provisions containing the term "issue" are virtually identical with the analogous provisions in Springs's will and trust.

Anne's eight children currently are receiving income from the various trusts. Anne now has seventeen grandchildren. One grandchild, Cara Augusta Close (Cara), is adopted.

Several persons brought actions seeking rulings concerning whether the term "issue" as used in the 1959 Trust, the Springs Will, and the subsequent instruments includes adopted children.[1] The circuit court judge relied on the Probate code to find "issue," as used in all of the instruments, included adopted children. One of the defendants, Brooks P. Goldsmith (Goldsmith), the guardian ad litem for several potential beneficiaries under the class gift provisions of the several trusts, appeals.

## LAW/ANALYSIS

A. *The 1959 Trust*

Goldsmith contends the use of the word "issue" in the 1959 Trust creates a latent ambiguity requiring the admission of extrinsic evidence of Spring's intent. We disagree.

The primary consideration in construing a trust is to discern the settlor's intent. *See, e.g., Chiles v. Chiles*, 270 S.C. 379, 242 S.E. (2d) 426 (1978). If the language of the trust instrument is plain and capable of legal construction, that language determines the force and effect of the instrument. Under such circumstances, extrinsic evidence will not be admitted to alter the plain language of the instrument. *Id.; see also Germann v. New York Life Ins. Co.*, 286 S.C. 34, 331 S.E. (2d) 385 (Ct. App. 1985) (same). Conversely, when there is no defect on the face of a document but an uncertainty appears upon attempting to effectuate the document, then the document contains a latent ambiguity and parol evidence is admissible to determine the settlor's intent. *E.g., Jennings v. Talbert*, 77 S.C. 454, 58 S.E. 420 (1907).

---

[1] The separate actions were consolidated into one proceeding, which is the case currently before this Court.

Here, Goldsmith's claim of a latent ambiguity rests on his assumption that the question of the inclusion of adopted children in class gifts was entirely unsettled when Springs executed the 1959 Trust. Although South Carolina law may have been unsettled about whether adopted children *generally* were included in class gifts, the specific question this Court must answer here is whether a class gift to "issue" included adopted persons.

A careful reading of the case law and other authorities on trust instruments reveals that when Springs executed the 1959 Trust, the term "issue" encompassed adopted children. Since long before 1959, "issue" has been held to embrace all lineal descendants of a settlor. *See, e.g., Corbett v. Laurens*, 26 S.C. eq. (5 Rich.) 301 (1853); *see also Bonney v. Granger*, 292 S.C. 308, 356 S.E. (2d) 138 (1987); *Woodle v. Tilghman*, 234 S.C. 123, 107 S.E. (2d) 4 (1959). "Lineal descendants," in turn, refers to the "whole of the indefinite line of inheritable succession"; *i.e.*, to those who would be eligible to take under the intestacy statutes in effect at the time of the execution of the trust. *Woodle*, 234 S.C. at 128, 107 S.E. (2d) at 6; *see also* GEORGE G. BOGERT, TRUSTS AND TRUSTEES § 182, at 302 (2d ed. 1979) ("A class described as 'issue' normally means the lineal descendants of the testator . . . who would inherit his property at his death under the law of intestate succession. . . .") (citing *Woodle v. Tilghman*, 234 S.C. 123, 107 S.E. (2d) 4 (1959)).

The dispositive question thus becomes whether adopted persons were eligible to inherit under the intestacy statutes in effect in 1959. As the circuit court's order correctly points out, South Carolina statutory law in the late 1950s and early 1960s provided that an adopted person was an heir of the adopting parents for purposes of inheritance. *See* ROA at 254; *see also* S.C. Code of Laws § 19-52.11 (1952) ("for all inheritance purposes without exception the adopted child shall be considered a natural child of the adopting parents"). Because the intestacy statutes granted adopted children rights of inheritance, the term "issue" as understood in 1959 included adoptees. Consequently, as Spring's intent can be discerned from the plain language of the trust, we find no ambiguity. Accordingly, resort to extrinsic evidence is unnecessary.

The circuit court judge did not resolve this matter as we do above by constructing case law to find "issue" included adopted persons. Instead, he applied the Probate Code's rules of construction to find Spring's class gift included adoptees. Because the Probate Code's rules of construction apply only to wills,[2] Goldsmith contends the circuit court erred in applying them to a trust to find no latent ambiguity.

Given the facts and circumstances of this case, we cannot say the circuit court erred in relying on the Probate Code's rules of construction to interpret the trust. In the same month he executed the 1959 Trust, Springs also executed a will that contained the same language concerning "issue" as did the trust. As all parties acknowledge, there is little reason to suppose Springs's intentions in the will were different from those in the trust. The Probate Code's rules of construction indisputably apply to the will. Therefore, when coupled with the clear evidence of a common intent with respect to the will and the trust, the mandatory application of the Probate Code to the will justifies the circuit court judge's reliance on the Probate Code to interpret the 1959 Trust. This reliance was particularly justified in light of the inconclusiveness of the extrinsic evidence concerning Spring's intent with respect to the inclusion of adopted children in the class gifts. *See* Part B *infra* (discussing extrinsic evidence of Spring's intent). Accordingly, we find no error.

### B. *Spring's Will*

Goldsmith next argues the circuit court judge erred in construing the class gift provisions in the Springs Will to include adopted persons. We disagree.

---

[2]The Probate Code's rules of construction expressly apply only to wills. However, the National Conference of Commissions on Uniform State Laws recently amended the Uniform Probate Code to clarify that many of the UPC's rules of construction, including the rule that adopted persons are included in class gift terminology, apply to trusts as well as to wills. *See* UNIF. PROB. CODE § 8-101(B)(5), 8 U.L.A. 390 (Supp. 1995) (1993 amendment). Because the South Carolina General Assembly has not yet adopted these amendments this Court ordinarily will not rely on these rules to interpret trusts. Nevertheless, application of the Probate Code's rules of construction to trust agreements is appropriate where, as here, a will and a trust are executed by the same person and contain language that clearly evinces the person's intent that the instruments be construed consistently with one another.

The South Carolina Probate Code (the Code or the Probate Code), S.C. Code Ann. § 62-1-100 *et seq.*, became effective July 1, 1987. Its rules of construction will be applied to determine a testator's intent unless the testator's will indicates a contrary intent. *See* S.C. Code Ann. § 62-2-601 (1987) ("The intention of a testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in the succeeding sections of this part apply unless a contrary intention is indicated by the will."). Section 62-1-100(b)(5) (Supp. 1994) provides that the Code's rules of construction apply retroactively "unless thee is a clear indication of a contrary intent." *See also White v. Wilbanks,* 301 S.C. 560, 393 S.E. (2d) 182 (1990) (holding that § 62-1-100(b)(5) *mandates* the retroactive application of the Code's presumptions and rules of construction unless there is a clear indication of a contrary intent).

Probate Code § 62-2-609 (1987) provides in pertinent part:

> [A]dopted persons . . . are included in *class gift terminology* and terms of relationship in accordance with rules for determining relationships for purposes of intestate succession. . . . (emphasis added)

This is clearly a rule of construction and it requires, in this instance, that the term "issue" in the Springs Will include both adopted persons and persons related by blood because the will does not provide otherwise. *See* Probate Code Article 2, Part 6 (entitled "Construction").

Goldsmith, however, suggests that extrinsic evidence provides the "Clear indication of a contrary intent" required by § 62-1-100(b)(5) (Supp. 1994). As noted above, S.C. Code Ann. § 62-1-100(b)(5) mandates the retroactive application of the Code's rules of construction and presumptions in the absence of a "clear indication of a contrary intent." This statutory language does not specify whether the "clear indication" must appear in the document being construed or whether extrinsic evidence may demonstrate such an indication.

S.C. Code Ann. § 62-2-601 limits a showing of intent that the Probate Code's rules of construction not apply to a will to the language of the will itself. To construe section 62-1-100(b)(5) to allow contrary intent to be shown only from the instrument itself would render (b)(5) mere sur-

plusage in light of the rule in section 62-2-610, *supra. See, e.g., Davenport v. City of Rock Hill,* 315 S.C. 114, 432 S.E. (2d) 451 (1993) (finding it incorrect to suppose that single word was inserted in statute without the intention of conveying some meaning). Moreover, had the Legislature wanted to limit subsection (b)(5) to the express language of the instrument being construed, it could have done so. Therefore, we hold subsection (b)(5) allows a party to present extrinsic evidence to show that a testator had a clearly contrary intent that should prevent retroactive application of a presumption or rule of construction.

In the present case, the circuit court judge concluded there was no clear evidence Springs intended to exclude adopted children. Specifically, he found that "notwithstanding the inadmissibility of extrinsic evidence, if such evidence were admissible, the extrinsic evidence in this case either supports the inclusion of adopted persons as 'issue' or is neutral to the question." ROA at 260. Although this Court has jurisdiction in this matter to find facts in accordance with its views of the preponderance of the evidence, it need not disregard the lower court's findings. *See, e.g., Stevenson v. Stevenson,* 276 S.C. 475, 279 S.E. (2d) 616 (1981).

Here, we see no reason to disturb the finding of the circuit court judge. The primary extrinsic evidence presented by the defendants were memoranda written by Springs's lawyers. One memorandum to Springs proposed that "issue" expressly be defined in the 1959 Trust to included adopted children. Another memorandum, also addressed to Springs, referred to a conversation between Springs and the lawyer and stated that the term "issue," as used in the proposed trust, did not include adopted children. The defendants also introduced deposition testimony by Mr. Elsas, a lawyer who assisted in drafting Spring's will and trust. Mr. Elsas testified that Springs was a man of strong opinions who, if presented with a choice, would make a clear and intelligent decision. Goldsmith relies on this evidence to show a clear intent by Springs to exclude adoptees from taking under the special power of appointment or default provisions in either the will or trust.

In this Court's opinion, the evidence is entirely inconclusive as to Spring's intent with respect to adopted children. First, there is no evidence Springs actually read or considered these

memoranda. Furthermore, Springs's failure expressly to include adopted children just as easily supports a finding he chose to leave the question unanswered as it does a finding Springs meant to exclude adopted children. Accordingly, the Probate Code's rules of construction mandate that adopted children are included in the Springs Will's class gift to "issue."

C. *The Subsequent Instruments*

The circuit court judge found the instruments executed after the Springs Will and the 1959 Trust should be construed in accordance with that will and trust. No party challenges this finding. Like the class gifts in the Springs Will and 1959 Trust, therefore, the class gifts in the subsequent instruments include adopted children.

For the foregoing reasons, the decision of the circuit court is AFFIRMED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.