19229

Laura P. ECHOLS et al. (Group I), J. Kelly Sisk, et al. (Group II), S. C. National Bank of Charleston, Greenville, et al. (Group III), Allen J. Graham, et al. (Group IV), Frances P. Bunnelle, et al. (Group V) and Dorothy P. Ramsaur, et al. (Group VI), Plaintiffs-Respondents, v. Allen J. GRAHAM et al. (Group I), Allen J. Graham, et al. (Group II), Edward H. Stall, et al. (Group III) and Multimedia, Inc. (Group IV), Defendants, of whom W. W. Wilkins, as g/a/l for John B. Harris, III, et al. (Group II) and W. W. Wilkins, as g/a/l for John B. Harris, III, et al. (Group III) and W. W. Wilkins, as g/a/l for all minor Defendants, Appellants.

(182 S. E. (2d) 69)

*W. W. Wilkins, Esq.,* of Greenville, *for Appellants,*

*Messrs. Wyche, Burgess, Freeman & Parham, P. A.,* of Greenville, *for Respondents,*

June 8, 1971.

LITTLEJOHN, Justice:

This action was brought under the Uniform Declaratory Judgment Act (Section 10-2001 *et seq.,* S. C. Code, 1962) to determine the rights of the parties under three documents, (1) a stock purchase agreement dated May 3, 1962, among certain stockholders of The Greenville News-Piedmont Company, a corporation (Now Multimedia, Inc.), (2) the Will of Roger Craft Peace, deceased, dated September 1, 1966, with Codicils dated November 28, 1967 and August 16, 1968, and (3) the Will of Frances P. Graham, deceased, dated November 5, 1964.

This appeal, from a portion of the decree of Honorable Frank Eppes, is by the guardian *ad litem* for the named minor defendants, individually and in their respective rep-

resentative capacities, and the guardian *ad litem* for all minor defendants, known or unknown, born or unborn, and all persons under legal disability. No other parties have appealed.

From 1927 until January 1, 1968, The Greenville News-Piedmont Company was a South Carolina corporation with 1000 shares of common stock outstanding. That corporation was closely held by the Peace family. Only 136 of its 1000 outstanding shares were held by outsiders.

On May 3, 1962 certain members of the Peace family, including Frances Peace Graham and Roger C. Peace (whose Wills are in question here), entered into a stock purchase agreement contracting not to sell their stock to outsiders without first offering it to members of the Peace family.

This family agreement was binding until July 1, 2000, but would terminate prior to that time upon either bankruptcy, or insolvency, or receivership, or merger, or dissolution, or upon the consent of Peace stockholders owning 677 of the 1000 outstanding shares.

On August 9, 1967, the officers and directors of the Greenville News-Piedmont Company, and of The Asheville Citizen-Times Publishing Company, and of Southeastern Broadcasting Corporation, entered into an agreement of merger of the three corporations. The merger was approved by the requisite vote of the stockholders of each of the three corporations at a meeting held on September 15, 1967. At that time all the "Peace Stockholders" who had signed the stock purchase agreement on May 3, 1962 were in being and all of them were present in person or by proxy at the stockholders meeting.

According to its own terms, the family agreement terminated on January 1, 1968, the effective date of the corporate merger. The surviving corporation became known as "Multimedia, Inc.," and its corporate purposes were substantially expanded and different in nature.

About five weeks before the effective date of the merger, on November 19, 1967, Frances Peace Graham, one of the "Peace Stockholders" who signed the family agreement, died testate, leaving of force her Last Will and Testament dated November 5, 1964. Item X of her Will reads in pertinent part:

"Anything in any item of this my Last Will and Testament to the contrary notwithstanding, I will and direct that all or any part of my stock in Greenville News-Piedmont Company shall be held by my Executors and Trustee subject to the provisions of the Stock Purchase Agreement among the members of the Peace Family dated May 3, 1962."

After execution of the family agreement, Roger C. Peace, another of the signators, executed his Last Will and Testament on September 1, 1966. Paragraph X of his original Will contained substantially the same provision as Paragraph X of his sister's Will, with reference to sale of their stock. However, on August 16, 1968, after the merger, he executed a codicil to his Will, specifically providing that any reference in his Will to the Greenville News-Piedmont Company should be construed to mean Multimedia, Inc., expressing a clear intention to restrict the sale of his stock even though the family agreement itself had clearly terminated by reason of the merger (seven months previously on January 1, 1968).

In the spring and summer of 1969 the corporation filed a Registration Statement with the Securities and Exchange Commission for the purpose of making a primary public sale offering; also, the Roger C. Peace and Frances Peace Graham estates had under consideration a secondary offering of a portion of their shares to the public for the purpose of raising funds to pay state and federal estate taxes. It was at this point that the question of the applicabiliy of the provisions of the family agreement and the restrictive provisions of the Frances P. Graham and Roger C. Peace Wills arose. This declaratory judgment action followed.

The lower court construed Item X (quoted above) of Mrs. Graham's Will inapplicable to stock in Multimedia, Inc. The court further held that the codicil to Roger C. Peace's Will (executed after the merger) applied and restricted the sale of his stock.

We must determine first whether the references in the Will of Frances P. Graham to Greenville News-Piedmont Company stock applies to Multimedia, Inc. stock now owned by her estate. The cardinal rule in the construction of any Will is to determine the intent of the testator as gleaned from the written instrument itself; technical rules of interpretation are subservient to that principle. *South Carolina National Bank of Charleston (Greenville, S. C.) v. Arrington,* 252 S. C. 1, 165 S. E. (2d) 77 (1968).

At the time Frances Peace Graham executed her Will in 1964, the family stock purchase agreement had been effective for two years. Obviously no merger was contemplated at that time; Item X of her Will was inserted in an effort to give effectiveness to and assure compliance with the family agreement. All signers of the family agreement were released from the terms of the agreement upon completion of the merger. The appellants are asking this court to hold that she intended for her stock in the new corporation to be controlled by the agreement even though the stock of several of the other members of the family is no longer bound. This is not a case wherein a new corporation is merely a substitute for the old corporation such that ownership of stock in the one is basically equivalent to ownership of stock in the other. The Greenville News-Piedmont Company had 27 stockholders; Multimedia, Inc. has more than 400 stockholders. The Greenville News-Piedmont Company primarily published newspapers in Greenville, South Carolina; Multimedia, Inc. publishes newspapers in Greenville, and Asheville, North Carolina, and in Montgomery and Prattville, Alabama; it operates a trucking company, a film distribution service, an engraving

business, a public printing concern, a picture studio, television stations and radio stations, in several states. The stock in Multimedia, Inc. represents substantially different property interests from that represented by stock in the Greenville News-Piedmont Company. We hold that Item X quoted above imposes no restrictions on the Multimedia, Inc. stock owned by the Frances P. Graham estate. The exception contending otherwise is without merit.

We have indicated above that, prior to the merger, Roger C. Peace and Frances Peace Graham executed Wills with similar provisions designed to perpetuate the family purchase agreement of 1962. Several months after the merger was completed (August 16, 1968), Roger C. Peace executed a codicil to his Will. By this instrument he expressed his intent that all references to the Greenville News-Piedmont Company and stock in the Greenville News-Piedmont Company be amended to refer to the newly created Multimedia, Inc. The lower court held: "Under these circumstances, there is no question but that Mr. Peace wanted his Multimedia, Inc., stock restricted as defined in his Will even though the Stock Purchase Agreement had been terminated by merger." The lower court ruling is obviously correct.

Under the terms of the Roger C. Peace Will as amended by the codicil it was directed that his executors and trustees hold the Multimedia, Inc. stock subject to the provisions of the family stock purchase agreement. The Will provided that stock not required to be sold in accordance with the stock purchase agreement be offered first to his daughter, Dorothy P. Ramsaur, or secondly, to the corporation itself, or thirdly, to members of the Peace family in certain proportions . The Will proceeded to define members of the Peace family as follows:

"The members of the 'Peace Family' as used in the foregoing item of this my Last Will and Testament shall mean Laura P. Echols, Gertrude P. Leake, B. H. Peace, Jr.,

Frances P. Graham and the husbands and wives and the natural-born lineal descendants of any such individuals."

By this appeal we are asked to determine the rights of "the husbands and wives and the natural born lineal descendants of any such individuals" as used in this definition quoted above. Specifically, the question posed, as taken from appellants' brief, is as follows:

"Does a Waiver in Writing of the Right to Purchase Stock of Multimedia, Inc., Under Item X of the Roger Craft Peace Will * * * By a Member of the Peace Family (As therein Defined) Bar Not Only the Signer of such Waiver but also any Present or Future Spouse of said Signer and the Present or Future Natural Born Lineal Descendants of such Signer?"

The trial judge held that the executors and trustees of Roger C. Peace were "not obligated now or at any time in the future to offer stock in Multimedia, Inc., to any Peace stockholder or member of the Peace family who has waived said right to purchase in writing." The court further held that the executors and trustees were "not obligated now or any time in the future, to offer stock to Multimedia, Inc., its successors and assigns, said corporation having waived any right under Item X of the Will to purchase any of said stock at any time." The effect of the court ruling was to hold that under the terms of the Roger C. Peace Will and codicil, the waiver bars not only the signers but also any present or future spouse and any present or future natural lineal descendants of such signers. We agree.

The executors are authorized to sell stock only after obtaining waivers from Mrs. Ramsaur, from the corporation, and from all members of the Peace family as defined in the Will. The Will of course limits purchase rights to those members of the class who do own stock. Such waivers will be the equivalent of refusals to purchase stock at any price by all persons entitled to preference, and will signal the executors and trustees that they may sell the stock on the

market. Members of the Peace family who may thereafter acquire stock in the corporation will acquire no rights with respect to the stock so sold.

The order of the lower court is

Affirmed.

Moss, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., concur in part.

BRAILSFORD, Justice (concurring in part) :

I agree with Justice Littlejohn's conclusion as to the issues relating to the Will of Frances Peace Graham. I agree in part with his conclusion as to the Will of Roger C. Peace.

The circuit decree authorizes the executors to sell stock only after obtaining waivers from Mrs. Ramsaur, the corporation and all members of the Peace family, as defined in the Will, *who own any stock in the corporation*. Such waivers will be the equivalent of refusals to purchase stock at any price by all persons entitled to preference under the terms of the Will; whereupon, the executors and trustees may, under the authority conferred by the Will, sell the stock to others. I agree that members of the Peace family who may thereafter acquire stock in the corporation will acquire no rights with respect to the stock so sold. However, I am not prepared to hold, as does the circuit decree, that waivers now obtained from all stockowning members of the Peace family will, as to future sales of stock, bar the preferential rights of other members of the family who may then own stock in the corporation; nor do I understand that a decision of this issue is necessary to accomplish the purpose of the action.

With this modification, I would affirm the order of the circuit court.

BUSSEY, J., concurs.