606 S.E.2d 769

In re ESTATE OF Roberta Maybank PRIOLEAU
and Estate of William F. Prioleau.

Ms. Elizabeth deRosset Prioleau, Petitioner,

v.

Mr. William F. Prioleau, Jr., Mary Wesley, Mrs. Roberta May-
bank Prioleau Moran, Ms. Gabrielle Wesley, Ms. Alicia Wells
Wesley, Russell W. Templeton, as Guardian ad Litem for Ms.
Caroline deRosset Wesley, a minor child, for Ms. Virginia
Maybank Prioleau, a minor child, and for Mr. William Fripp
Prioleau, III, a minor child, Carlos Gibbons, as Guardian ad
Litem for Ms. Roberta Maybank Moran, a minor child, and
William Barry Prioleau Moran, a minor child, and the class of
grandchildren unborn at the deaths of Roberta Maybank Priol-
eau and William F. Prioleau, Respondents,

of whom Russell W. Templeton, as Guardian ad Litem for Ms.
Caroline deRosset Wesley, a minor child, for Ms. Virginia May-
bank Prioleau, a minor child, and for Mr. William Fripp Priol-
eau, III, a minor child are Appellants,

and Carlos Gibbons, as Guardian ad Litem for Ms. Roberta
Maybank Moran, a minor child, and William Barry Prioleau
Moran, a minor child, and for the class of grandchildren
unborn at the deaths of Roberta Maybank Prioleau and Wil-
liam F. Prioleau are Respondents.

and

Ms. Mary Prioleau Wesley, Petitioner,

Mr. William F. Prioleau, Jr., Ms. Elizabeth DeRosset Prioleau,
Mrs. Roberta Maybank Prioleau Moran, Ms. Gabrielle Wesley,
Ms. Alicia Wells Wesley, Russell W. Templeton, as Guardian ad
Litem for Ms. Caroline deRosset Wesley, a minor child, for Ms.
Virginia Maybank Prioleau, a minor child, and for Mr. William
Fripp

v.

Prioleau, III, a minor child, Carlos Gibbons, as Guardian ad
Litem for Ms. Roberta Maybank Moran, a minor child, for
William Barry Prioleau Moran, a minor child, and the class of
grandchildren unborn at the deaths of Roberta Maybank Priol-
eau and William F. Prioleau, Respondents,

of whom Russell W. Templeton, as Guardian ad Litem for Ms.

Caroline deRosset Wesley, a minor child, for Ms. Virginia May-bank Prioleau, a minor child, and for Mr. William Fripp Prioleau, III, a minor child are Appellants,

and Carlos Gibbons, as Guardian ad Litem for Ms. Roberta Maybank Moran, a minor child, William Barry Prioleau Moran, a minor child, and for the class of grandchildren unborn at the deaths of Roberta Maybank Prioleau and William F. Prioleau are Respondents.

No. 25905.

Supreme Court of South Carolina.

Dec. 6, 2004.

Heard Oct. 20, 2004.

Decided Dec. 6, 2004.

Russell W. Templeton, of Columbia, for Appellants.

Carlos W. Gibbons, Jr., of Ormand, Ashley & Gibbons; Deborah Harrison Sheffield, of Law Offices of Deborah Harrison Sheffield, P.A.; Gabrielle Wesley; Alicia Wells Wesley; and Kenneth B. Wingate and Paul D. Kent, both of Sweeny, Wingate & Barrow, all of Columbia; and Robert M. Kunes and Virginia D. Meeks, both of Evans, Carter, Kunes & Bennett, P.A, of Charleston, for Respondents.

Justice WALLER:

The appellants appeal the probate court's order interpreting the meaning of language in two wills. We reverse.

## FACTS

This probate action involves the construction of an identical clause in the wills of William F. Prioleau (William) and Roberta Maybank Prioleau (Roberta). Roberta died on September 24, 1995, and William died on January 27, 1997. In each of their wills, the Prioleaus provided that a share of his/her estate was to be given to their "then-living grandchildren."

Specifically, Roberta divided her residual estate into two shares: Share A was to go to William if he survived her and was drafted in a· manner to take advantage of the maximum tax deduction in a marital share; and Share B was to be divided into five equal shares with one share going to each of the couple's four children and one share to the couple's "then-living grandchildren." Further, Share B was to be held and administered as the Prioleau Family Trust until distribution which was to occur after the deaths of both Roberta and William. William's will, executed after the death of Roberta, has a similar provision with Shares A–1 and B–1. It is unclear to whom Share A–1 was to be given.[1] Apparently, as a result of the failure of Share A–1 in William's will, the entire residual estate is now to pass as Share B–1 to the couple's children and the "then-living grandchildren."

Elizabeth Prioleau (Elizabeth) is co-personal representative along with her brother William F. Prioleau, Jr. (Will) for their father William's estate.[2] Subsequent to William's death, two grandchildren were born—one on August 17, 1998, and the other on July 7, 2000.[3] After the second grandchild was born,

1. Although Roberta had obtained legal advice in drafting her will, apparently William used Roberta's will as a guide in drafting his own will. Roberta died before William executed his will and he had not remarried. Therefore, he could not take advantage of a marital deduction as Roberta had done in her will with Share A.

2. Will was the successor personal representative for Roberta's estate and after William's death, he assumed the personal representative role for her estate.

3. Only one of William and Roberta's children does not have any children, Elizabeth. The other three children of William and Roberta

Elizabeth petitioned the probate court for an order regarding the phrase "then-living grandchildren." The probate court appointed two guardians ad litem, one for the grandchildren born after William's death and the other for those grandchildren living at William's death.

Looking at extrinsic evidence, the probate court held that the phrase "then-living grandchildren" in the wills created a latent ambiguity as to whether it refers to those grandchildren living at the death of William or the date of distribution. Then the probate court, looking at extrinsic evidence, interpreted the phrase to include those grandchildren living at the time of distribution.

## ISSUE

What does the phrase "then-living grandchildren" mean in the Prioleaus' wills?

## DISCUSSION

There are two possible interpretations of the phrase "then-living grandchildren" in the Prioleaus' wills: 1) the grandchildren living when the testators died; or 2) the grandchildren living when the estate is distributed at some point in the future. Relying on extrinsic evidence, the probate court agreed with the respondents and held the phrase created a latent ambiguity. Then she determined that Roberta and William intended to include all of their grandchildren living at distribution. The appellants contend the phrase refers to the grandchildren living when the testators died.

 It is elementary that a testator's intention, as expressed in his will, governs the construction of it if not in conflict with law or public policy and intent is to be ascertained upon consideration of the entire will. *Gist v. Brown,* 236 S.C. 31, 113 S.E.2d 75 (1960). In construing the provi-

---

have a total of seven children: Mary Prioleau Wesley has three children; William Prioleau has two children; and Roberta Prioleau Moran has two children, both born after William's death. The issue of Elizabeth's standing was raised below but is not an issue on appeal. Furthermore, Elizabeth contended below that she was seeking an interpretation of the phrase "then-living grandchildren" so that she could fulfill her obligations as co-personal representative.

sions of a will, every effort must be made to determine the intentions of the testator and carry out such intentions. *Citizens & S. Nat'l Bank v. Cleveland,* 200 S.C. 373, 20 S.E.2d 811 (1942). Further, the court must always first look to the language of the will itself. *Pate v. Ford,* 297 S.C. 294, 299, 376 S.E.2d 775, 778 (1989). The court "must give the words contained in the document their ordinary and plain meaning unless it is clear the testator intended a different sense or such meaning would lead to an inconsistency with the testator's declared intention." *Bob Jones Univ. v. Strandell,* 344 S.C. 224, 230, 543 S.E.2d 251, 254 (Ct.App.2001).

▆▆▆▆ Ambiguities may be patent or latent. "[T]he distinction being that in the former case the uncertainty is one which arises upon the words of the ... instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe, while in the latter case the uncertainty arises, not upon the words of the ... instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe." *In re Estate of Fabian,* 326 S.C. 349, 353, 483 S.E.2d 474, 476 (Ct.App.1997) (*citing Jennings v. Talbert,* 77 S.C. 454, 456, 58 S.E. 420, 421 (1907)). A court may admit extrinsic evidence to determine whether a latent ambiguity exists. *Id.* at 353, 483 S.E.2d at 476. Once the court finds a latent ambiguity, extrinsic evidence is also permitted to help the court determine the testator's intent. *Id.*

▆▆ After looking at both of the wills in their entirety and the extrinsic evidence, we hold the phrase is not ambiguous. Roberta's will provides: *"Upon the death of the survivor of my said husband or me,* my trustees shall divide and distribute this Trust as then constituted as follows: ... (e) One-fifth (1/5) to be divided among my then-living grandchildren in equal shares." (emphasis added). Likewise, William's will provides: *"Upon my death,* my Trustees shall divide and distribute this Trust as then constituted as follows ... (e) one-fifth (1/5) to be divided among my then-living grandchildren in equal shares." (emphasis added). Thus, the shares were to be divided and distribution was to take place upon the death of William as he survived Roberta. We also note that both wills provided for distribution of the income from the Trust "[c]om-

mencing with the date of [ ] death ..." The wills themselves do not support a finding of ambiguity.

Furthermore, the extrinsic evidence also does not support such a finding. Specifically, the probate court noted that Roberta and William were generous, gave to charity, and placed a great deal of importance on family. The probate court then noted that inclusion of the grandchildren in the will "in and of itself was evidence of the importance of family" to Roberta and William. Further, the probate court held that based upon all of the testimony and evidence of intent before the court and the fact that the assets have not yet been distributed and the trust has not been funded, the phrase "then living grandchildren" includes those living at the time of the funding and distribution of the trust.

However, there is no specific testimony in the record regarding the intent of Roberta and/or William to include after born grandchildren. There was opinion testimony that had Roberta and William known of the two grandchildren born after his death, they would have wanted all of their grandchildren to have been included.[4] However, this is not evidence that they intended in drafting their wills and referring to "then-living grandchildren" to mean those grandchildren living at the time of distribution. *See Estate of Toland,* 495 Pa. 482, 434 A.2d 1192, 1194 (1981) (holding the duty of the court is not to determine what the testator might or should have said in light of subsequent events but, rather, the actual meaning of the words used).

In conclusion, the phrase is not ambiguous. The class of "then-living grandchildren" closed at William's death excluding any after-born grandchildren.

**REVERSED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

4. Even under the respondents' view, it is possible that one or more grandchildren might be born in the future and be excluded *if* born after distribution.