## 23513

Edna K. ALLISON and Theo Scott Sanford, Respondents v. Zelma Scott WILSON, R. Carter Scott, Philip Scott, Hugh Scott, Olive S. Forde, Ann S. Strand, John O. Scott, John Meadows, III, Scott Meadows, Mike Meadows, Sue S. Hayes, Linda Ann Senn, Mary Beth Viohl, Daniel W. Swint and Linda G. Swint, Defendants, Of Whom Zelma Scott Wilson is Appellant, and R. Carter Scott, Philip Scott, Hugh Scott, Olive S. Forde, Ann S. Strand, John O. Scott, John Meadows, III, Scott Meadows, Mike Meadows, Sue Hayes, Daniel W. Swint and Linda G. Swint, are also Respondents.

(411 S.E. (2d) 433)

Supreme Court

*Wesley Waites, Jr.*, West Columbia, *for appellant.*

*O. Douglas Smith* and *Thomas P. Murphy*, of *Smith & Murphy*, of North Augusta, *for respondents Edna K. Allison* and *Theo Scott Sanford.*

*Charles W. Coleman*, of Edgefield, *for respondents R. Carter Scott, Philip Scott, Hugh Scott, Olive S. Forde, Ann S. Strand, John O. Scott, John Meadows, III, Scott Meadows, Mike Meadows* and *Sue Hayes.*

*Kelly Zier*, North Augusta, *for respondents Daniel W. Swint* and *Linda G. Swint.*

Heard Jan. 8, 1991; Decided Dec. 2, 1991.

Rehearing Den. Jan. 7, 1992.

FINNEY, Justice:

Appellant Zelma Scott Wilson appeals the Court of Appeals' opinion affirming the circuit court's construction of the will of Inez Scott Kahrs. We reverse.

The following portion of Item 4 of the will is controverted:

> I give and devise the two parcels described in this Item of my will to my brother, O.B. Scott, for his natural life, with the right to remove and cut any timber on its becoming large enough to sawmill, with remainder over to my brother R.C. Scott, and my two sisters, Myrtle Scott Klugh and Zelma Scott Wilson, share and share alike, and should either of the remaindermen named pre-decease me it is my wish that the children of such deceased parent shall take the share that would have come to the parent if still in life.
>
> It is my wish that the three remaindermen named shall take the property described in this Item in fee simple on the death of the life tenant, but before the vesting of the fee simple title I require that should my brother's wife, Anita Reddick Scott, survive him, that the remaindermen named in this Item shall tender to her $1,000.00 in cash within six months after the death of my brother, the life tenant. If the remaindermen named should fail to make such tender within six months after the death of my brother, the life tenant, should Anita Reddick Scott survive him, then, she, Anita Reddick shall take the parcels described herein in fee simple.

The testatrix, Inez Scott Kahrs, died in 1956. Remainderman R.C. Scott (R.C.) died in 1973, survived by children.

Remainderman Myrtle Scott Klugh (Myrtle) died in 1980, survived by a daughter. O.B. Scott (O.B.), the life tenant, died in 1985, survived by his widow Anita Reddick Scott (Anita). The $1,000 payment required by the will was timely tendered to Anita following O.B.'s death.

Respondents Edna K. Allison and Theo Scott Sanford instituted this declaratory judgment action in 1987 seeking, *inter alia*, construction of Item 4 of the will. The matter was referred to a special referee who heard the case and issued his order, which included the following conclusions of law:

Inasmuch as the life tenant named in Item IV of the Will of Mrs. Kahrs survived the testatrix, it is clear that a life estate was created which was terminated upon his death in 1985. A charge was placed upon the remainder over as follows: "Before the vesting of fee simple title, I require that . . . the remaindermen named in this Item shall tender to [Anita Reddick Scott] One Thousand and No/100 ($1,000.00) Dollars in cash within six (6) months after death of my brother." Such tender in fact was made three (3) days following the death of the life tenant, and therefore the charge on the real estate imposed by Item IV of the Will was satisfied and is now extinguished.

The central issue before the Court is whether the language of Item IV gave the remaindermen a vested interest as of the date of the death of Mrs. Kahrs, or whether, as contended by the Defendants, the testatrix intended that the remainder interest not vest until the death of the life tenant.

· · · · ·

There can be no question that the language quoted above gave the remaindermen a vested remainder in fee simple as of the date of the death of the testatrix, subject only to the charge on the property to pay cash monies to the widow of the life tenant following his death.

· · · · ·

. . . Therefore, as of the date of [death of] the testatrix, and subject to the life estate, R.C. Scott, Myrtle Scott Klugh, and Zelma Scott Wilson each owned an undivided one-third (⅓) interest in the remainder of the property.

Appellant filed exceptions to the special referee's report. The circuit court affirmed the special referee's findings of fact and conclusions of law. On appeal, the Court of Appeals affirmed, "with a minor variation," the order of the court of common pleas and denied appellant's subsequent petition for rehearing. By order dated September 27, 1990, this Court granted appellant's petition for writ of certiorari.

The sole issue before this Court is whether the remainder interest devised to R.C., Myrtle and appellant vested at the death of the testatrix.

Appellant asserts the testatrix intended that remainder-men who survived the testatrix must also survive the life tenant and make the cash tender before fee simple interest would vest.

Respondents contend the testatrix intended that fee simple interest vest at the death of the testatrix and that the remainder interests be transmitted through the remaindermen to their children. We disagree.

The rules of construction are subservient to the primary consideration of ascertaining what the testator meant by the terms used in the written instrument itself, and each item of a will must be considered in relation to other portions. *Echols v. Graham*, 256 S.C. 202, 182 S.E. (2d) 69 (1971); *Miller v. Rogers*, 246 S.C. 438, 144 S.E. (2d) 485 (1965); *Black v. Gettys*, 238 S.C. 167, 119 S.E. (2d) 660 (1961). Notwithstanding rules and presumptions which favor vesting of estates at the earliest possible time, rules of construction are designed to aid in determining a testator's intent. In instances where such intention has been clearly expressed and would not violate established rules of law, arbitrary rules of construction should not be permitted to defeat a testator's intent. *Lee v. C&S National Bank*, 253 S.C. 556, 172 S.E. (2d) 114 (1970); *Albergotti v. Summers*, 205 S.C. 179, 31 S.E. (2d) 129 (1944).

The Court of Appeals determined that *Freeman v. Davis*, 113 S.C. 502, 101 S.E. 855 (1920), is controlling. We find a clear distinction between the terms of devise employed by Inez Scott Kahrs and the terms used by the testator in *Freeman*. Following is the pertinent portion of the will in *Freeman:*

... [A]t the death of my beloved wife, Jane C. Davis, the whole of my estate shall become the property of my

brother, William Davis, *provided* my brother, William Davis, shall within six months after the death of my wife pay to my nephew, William C. Davis, three hundred dollars in money. (Emphasis added.)

The testatrix in the case under consideration provided:

It is my wish that the three remaindermen named shall take the property described in this Item in fee simple on the death of the life tenant, but *before the vesting of the fee simple title* I require that should my brother's wife, Anita Reddick Scott, survive him, that the remaindermen named in this Item shall tender to her $1,000.00 in cash within six months after the death of my brother, the life tenant. If the remaindermen named should fail to make such tender within six months after the death of my brother, the life tenant, should Anita Reddick Scott survive him, then, she, Anita Reddick (sic) shall take the parcels described herein in fee simple. (Emphasis added.)

We read *Freeman* to make the specified cash tender a condition subsequent to the vesting of fee simple title, which was not contingent upon such tender. Conversely, the Kahrs will states explicitly that before vesting of fee simple title, the named remaindermen shall tender the required cash to Anita, if Anita survived O.B.; and upon failure of the named remaindermen to make such tender, Anita shall take the parcels in fee simple. Every word or phrase in a will must be considered and, if practicable, effect must be given to them. *Lemmon v. Wilson*, 204 S.C. 50, 28 S.E. (2d) 792 (1944).

This Court established the rule for transmissible contingent interests in *Jones v. Holland*, 223 S.C. 500, 77 S.E. (2d) 202 (1953). *Jones* provides that where the person to take in remainder is ascertained and only the event upon which they are to take is uncertain, the estate in remainder is transmissible to heirs of the remaindermen upon the occurrence of such event. However, in instances such as the case under consideration where the person to take is uncertain, the estate does not become transmissible until vesting occurs upon happening of the contingency. *Jones v. Holland*, 77 S.E. (2d) at 205.

Hence, we conclude the testatrix intended that vesting of fee simple title was wholly contingent upon the named remaindermen timely tendering the required

cash payment to Anita, if surviving, upon the death of the life tenant.

In affirming, the Court of Appeals noted a minor variation concerning the use of the word "subsequent" in the special referee's report and the word "antecedent" in the circuit court order. The special referee held:

> . . . There can be no question that the clear language of Mrs. Kahrs['] will as expressed in Item IV creates a vested remainder subject to a condition *subsequent*, that is, the requirement that the remaindermen pay to the widow of the life tenant one thousand dollars and No/100 ($1,000.00) Dollars within six (6) months following the death of the life tenant. Inasmuch as this charge upon the real estate was in fact satisfied, there was no divestiture. The remainder rights of the remaindermen vested, subject to the possibility of divestment, as of the date of Mrs. Kahrs ['death] in 1956. (Emphasis added.)

The circuit court found:

> . . . Item 4 of Mrs. Kahrs' Will created a vested remainder subject to a condition *antecedent*. The Report of the Special Referee should be confirmed in its entirety concerning the construction of the Will. (Emphasis added.)

The Court of Appeals held that the word "antecedent" as used by the circuit court was misplaced, and construed the appealed order as confirming the special referee's holding that Item 4 created a life estate with a vested remainder subject to a condition subsequent.

> "While a contingent remainder is one limited to take effect either to a dubious and uncertain person or upon a dubious and uncertain event, it does not follow that every remainder which is subject to a contingency or a condition is therefore a contingent remainder; if the condition be precedent the remainder is contingent, and, if subsequent, the remainder is vested, subject to divestiture on the happening of the condition." *Walker v. Alverson*, 87 S.C. 55, 68 S.E. 966 (1910). This Court held in *Lemmon v. Wilson, supra*, that the estate in remainder must be fixed and certain in remainder-

men at time of its creation in order to create a "vested remainder." Moreover, vesting of remainder must not depend upon the performance or happening of a condition precedent.

"Antecedent" is defined as prior in point of time. "Subsequent" means following in time. We conclude that the provision directing a cash tender to Anita, if surviving, before the vesting of fee simple title constitutes a condition antecedent and the contingent event upon which vesting depended at the death of the life tenant.

In seeking to ascertain the intent of a testator, his intent must be ascertained from the four corners of the will. Reference is made to Item 3 wherein the testatrix devised a life estate to her husband with remainder over to the identical remaindermen named in Item 4. Item 3 follows:

> I give and devise unto my beloved husband, Charles T. Kahrs, my home at 607 Lake Avenue, North Augusta, and the vacant lot adjacent designated as 605 Lake Avenue, together with all furnishings in my home, for and during his natural life, with remainder over to my brother, R.C. Scott, and my sisters, Myrtle Scott Klugh and Zelma Scott Wilson, share and share alike, in fee simple, and should my brother herein named, or either of my two sisters, pre-decease me, or pre-decease my husband, Charles T. Kahrs, it is my intent that the surviving heirs of such deceased brother, or sister, shall take the deceased parent's share, pre-stirpes [sic]. Should a niece of [sic] nephew entitled to take under this Item pre-decease the termination of the life tenancy leaving child, or children, it my intent that the share that would have gone to such niece, or nephew shall be equally divided among the surviving children.

The will was dated January 11, 1954. On June 19, 1954, the testatrix executed a codicil, the pertinent portion of which follows:

> WHEREAS, I am desirous of clarifying a provision of said will that might be considered ambiguous;
>
> I, therefore, make a [sic] publish this codicil as follows:

1. The devise to my husband, CHARLES T. KAHRS, as contained in Item 3 of my said will is intended by me to be in lieu of all rights of curtesy, or other inheritable rights that my said husband, as such, shall be entitled from my estate.

Items 3 and 4 were the sole provisions which disposed of real property; both are explicit. We are constrained to conclude the testatrix was satisfied that her will clearly expressed her intent. Our conclusion is supported by her codicil executed to clarify the provision she felt might be considered ambiguous. Further, the fact that the codicil was dated several months after the will tends to indicate the testatrix availed herself of the opportunity for counsel, review and reflection upon the effect of the respective provisions of her will.

We hold that, in this instance, vesting of fee simple title to the remainder occurred upon the required cash tender to Anita at the death of the life tenant. Since the two remaindermen who predeceased the life tenant had not acquired vested interests, and only vested interests may be inherited, their respective interests were extinguished at the time of their death.[1] Consequently, fee simple title to the remainder passed to the appellant, the lone remainderman surviving at the time title vested.

Accordingly, the judgment of the Court of Appeals is reversed.

Reversed.

GREGORY, C.J., and HARWELL, CHANDLER and TOAL, JJ., concur.

---

[1] Had Item 4 provided that should any remainderman predecease the life tenant, their children would take such remainderman's share, the result would be different since the children would then stand in their parent's stead.