606 S.E.2d 205

**In re The ESTATE OF Melvin HYMAN; In re The Estate of Maintzie R. Hyman; In re The Ancillary Estate of Melvin Richardson Hyman, Sr.**

**M. Richardson Hyman, Jr., Appellant,**

**v.**

**Maintzie Carolina Gugliotti; Mary Caroline Hyman, as Personal Representative of the Estate of Maintzie R. Hyman; The Estate of Maintzie R. Hyman; Mary Caroline Hyman, Individually; Mary Caroline Hyman, as Guardian of Benjamin Fraser Hyman, a person who is Incapacitated or Incompetent; Benjamin Fraser Hyman, a person who is Incapacitated of Incompetent; and Sara H. Hyman, Respondents.**

No. 3895.

Court of Appeals of South Carolina.

Heard Oct. 12, 2004.

Decided Nov. 22, 2004.

---

22

Melvin Richardson Hyman, Jr., of Charleston, for Appellant.

Charles J. Hupfer, Jr., and John R. Chase, both of Florence, Maintzie Caroline Gugliotti, of Charleston, and Mary Caroline Hyman and Benjamin Fraser Hyman, both of Savannah, for Respondent.

## PER CURIAM:

M. Richardson Hyman, Jr. appeals a circuit court order affirming the special referee's decision that a vested remainder in certain stocks owned by Hyman's father passed to his wife through the residuary clause of his will and not through a direct devise to his children. We affirm.

## FACTS

Following a lifetime of distinguished service to the people of this state as a highly respected member of the South Carolina Bar, Melvin Hyman passed away in 1973. He was survived by his wife, Maintzie R. Hyman, and two children, Melvin R. Hyman and Mary C. Hyman. In his last will and testament, Melvin Hyman granted a life estate in certain securities to his wife, with a remainder interest to his two children. Melvin

Hyman expressly stated in his will that his children's remainder interest would "vest immediately upon [his] death, subject only to the life estate devised and bequeathed to my said wife."

In 1984, Melvin Hyman's son, Melvin R. Hyman ("Testator"), was diagnosed with a life threatening disease. Because his condition worsened over the years following this diagnosis, Testator decided to undergo an operation in September 1987. In contemplation of serious risks inherent in this particular kind of surgery, he executed a will shortly before the operation. A few weeks following the surgery, Testator passed away. Testator was survived by his mother, Maintzie; his second wife, Sara Hyman; and three children from his first marriage, M. Richardson Hyman, Jr. ("Appellant"), Benjamin F. Hyman, and M. Caroline Hyman.

Article three of Testator's will, which establishes a trust for the benefit of his children, states the following:

I will, devise, and bequeath to my three children any and all property which I may receive by reason of inheritance from my mother's [Maintzie's] estate.

Testator also provided that the residue of his estate was to be distributed to his wife, Sara Hyman, outright and free of trust.

In January 1999, Maintzie R. Hyman, wife of Melvin Hyman and mother of Testator, passed away, terminating her life estate in the aforementioned securities at issue in this case. At this time, the remainder interests devised to Testator and Mary C. Hyman became possessory. Sara Hyman, Testator's wife, began receiving distributions and paying taxes on Testator's portion of the securities pursuant to the residuary clause of Testator's will.

In 2001, Appellant filed this action seeking· to reopen Testator's estate and declare Testator's three children the lawful heirs of the securities pursuant to article three of Testator's will. The case was referred by consent of the parties to a special referee. At trial, Appellant offered testimony, over the respondents' objection, from Mary C. Hyman, sister of Testator, which evidenced Testator's intent that his remainder interest in the securities pass through his will to his children,

notwithstanding the will's express language.[1] Although this testimony was allowed at trial, the referee later determined it was improperly admitted, as the will contained no ambiguity which would warrant the admission of extrinsic evidence. The referee found, by the plain and ordinary meaning of the will's language, that the remainder interest in the securities owned y Testator passed to his wife through the residuary clause of his will and not to his children by the direct devise of article three. The circuit court affirmed the referee's decision. This appeal follows.

## STANDARD OF REVIEW

The standard of review applicable to cases originating in the probate court is controlled by whether the underlying cause of action is at law or in equity. *Howard v. Mutz,* 315 S.C. 356, 361–62, 434 S.E.2d 254, 257–58 (1993). This is an action at law. *NationsBank of South Carolina v. Greenwood,* 321 S.C. 386, 392, 468 S.E.2d 658, 661(Ct.App.1996) (holding an action to construe a will is an action at law). If a proceeding in the probate court is in the nature of an action at law, review by this court extends merely to the correction of legal errors. *Townes Assocs. Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

Appellant argues the probate court erred in finding no ambiguity in Testator's will and refusing to consider extrinsic evidence to ascertain Testator's true intent. We disagree.

In construing a will, a court should give effect to the expressed intention of the testator. *Bagwell v. Alexander,* 285 S.C. 331, 329 S.E.2d 771 (Ct.App.1985). In ascertaining this intent, a court's first reference is always to the will's language itself. *Fenzel v. Floyd,* 289 S.C. 495, 498, 347 S.E.2d 105, 107 (Ct.App.1986). When construing this language, the reviewing tribunal must give the words contained in the document their ordinary and plain meaning. *In re Estate of Fabian,* 326 S.C.

---

1. Specifically, Testator's sister testified she and her brother both frequently referred to their vested remainder interests in their mother's life estate as property that would come to them from their mother, their "mother's estate," or "the Hyman estate."

349, 353, 483 S.E.2d 474, 476(Ct.App.1997). Where the testator's intent is ascertainable from the will and not counter to law, we will give it effect. *Id.* Only when the will's terms or provisions are ambiguous may the court resort to extrinsic evidence to resolve the ambiguity. *See Fenzel,* 289 S.C. at 498, 347 S.E.2d at 107.

In the case at bar, the Testator's remainder interest in the securities clearly does not pass through article three of the will to his children when the language of article three is given its plain and ordinary meaning. The provision states, "I will, devise, and bequeath to my three children any and all property which I may receive by reason of inheritance from my mother's estate." Testator owned his remainder interest in the securities at the time he executed his will. The remainder interest, though subject to his mother's life estate, was at no time part of his mother's actual estate and, thus, never passed to him through inheritance from his mother. Appellant contends, however, that the provision is ambiguous; therefore, the court should consider extrinsic evidence to ascertain Testator's true intent. We do not agree with this position.

There are two types of ambiguities found in the construction of wills:

Ambiguities ... are patent and latent; the distinction being that in the former case the uncertainty is one which arises upon the words of the ... instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe, while in the latter case the uncertainty arises, not upon the words of the ... instrument as looked at in themselves, but upon those words when applied to the object or subject which they describe.

*Fabian,* 326 S.C. at 353, 483 S.E.2d at 476 (quoting *Jennings v. Talbert,* 77 S.C. 454, 456, 58 S.E. 420, 421 (1907)). It is undisputed that the will in the case before us contains no patent ambiguity arising from the will's own language. It is, however, argued that, when one considers Testator's property and the circumstances known to him at the execution of his will, a latent ambiguity arises and extrinsic evidence may be admitted to resolve it.

Appellant first contends the will is inconsistent when applied to Testator's property because, without the remainder

interest, the children's trust is left unfunded. According to Appellant, Testator must have been aware of his mother's relative good health at the time of the will's execution and, thus, could not have intended to leave the trust barren in the probable circumstance that he predeceased his mother. Because a testator is presumed to have disposed of all property that he owned and the remainder interest was not specifically disposed, Appellant argues the will is ambiguous. *See Gano v. Gano,* 239 Ill. 539, 88 N.E. 146, 147 (1909).

 The presumption, arising from the law's disfavoring of partial intestacy, that a testator intends to dispose of his entire estate is, in fact, a longstanding rule in South Carolina. *See Dobson v. Smith,* 213 S.C. 15, 48 S.E.2d 607 (1948). However, intestacy is not an issue in this matter. Testator disposed of his entire estate under the will's residuary clause. Furthermore, by Testator's language in article three, he acknowledges he does not own the property, which he *"may receive by reason of inheritance"* from his mother. These words clearly establish a contingency providing for Testator's children in the event their grandmother died before their father, no matter how unlikely. Where a testator employs language that is clear and definite, the function of the court is consigned to the interpretation of the will and the enforcement of its provisions without resorting to rules of construction. 80 Am.Jur.2d *Wills* § 1132 (2004). "Circumstances known to Testator at the time of execution are an admissible aid in construing *doubtful* provisions, but the main recourse must be to the language used in the will." *Limehouse v. Limehouse,* 256 S.C. 255, 257, 182 S.E.2d 58, 59 (1971) (emphasis added). Because the language of Article three is clear and definite, not doubtful, the referee was proper in upholding the provision's plain meaning.

Appellant also contends the will is ambiguous because extrinsic evidence in the form of Testator's sister's testimony shows Testator's intent to be different from the plain language of the will and the findings of the special referee. Again, we disagree.

 A court may admit extrinsic evidence to determine

whether a latent ambiguity exists.[2] *Fabian*, 326 S.C. at 353, 483 S.E.2d at 476. In order to find an ambiguity, however, the extrinsic evidence must reflect that the words of the will, when applied to the object or subject which they describe, are "incapable of application as they stand." *Boykin v. Capehart*, 205 S.C. 276, 31 S.E.2d 506 (1944). The mere showing that a testator may have intended a testamentary construction in direct contradiction to the plain meaning of the will's language is not enough. As the supreme court has stated, "[a] will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity, repugnancy or inconsistency with the declared intention of the testator" should follow. *In the Matter of Ezra Clark*, 308 S.C. 328, 330, 417 S.E.2d 856, 857 (1992).

The special referee correctly found that giving the language of this will its plain and ordinary meaning did not render it "incapable of application" or result in "an obvious absurdity, repugnancy, or inconsistency with Testator's declared intent." *Boykin*, 205 S.C. at 279, 31 S.E.2d at 508; Id. At the time Testator created his will, Maintzie Hyman had a considerable estate she conceivably could have left to Testator if the contingency of her death before his had been met, thereby fulfilling his primary goal of providing for the "reasonable comfort" and proper education of his three children. Accordingly, the evidence supports the trial court's findings that no latent ambiguity exists; therefore, the use of extrinsic evidence to determine Testator's intent is not appropriate.

## CONCLUSION

For the reasons stated herein, the circuit court is

**AFFIRMED.**

GOOLSBY, ANDERSON, and WILLIAMS, JJ., concur.

---

2. Once the court finds a latent ambiguity, extrinsic evidence is also permitted to help the court determine the testator's true intent and resolve the ambiguity. *Fabian*, 326 S.C. at 353, 483 S.E.2d at 476.