640 S.E.2d 480

**Donna L. HOLCOMBE–BURDETTE, as Personal Representative of the Estate of Charles A. Burdette, Appellant,**

**v.**

**BANK OF AMERICA, successor by merger to Farmer's Bank of Simpsonville, and Bertha B. Bozeman, as Co–Trustees of Trust, Bernie W. Burdette, Helen B. Peters, Bertha B. Bozeman, Individually, Robert McPherson Burdette, Alice Diane Kervin, and George Benjamin Peters, Respondents.**

**In re Last Will and Testament of Bennie W. Burdette.**

**No. 4180.**

Court of Appeals of South Carolina.

Heard Nov. 9, 2006.

Decided Nov. 27, 2006.

Rehearing Denied Jan. 29, 2007.

650

James B. Drennan, III, of Spartanburg, for Appellant.

Bertha Bozeman, of Lexington and Laurel R.S. Blair and R. O'Neil Rabon, Jr., both of Greenville, for Respondents.

ANDERSON, J.:

Donna L. Holcome–Burdette, as the personal representative of the estate of Charles A. Burdette (Personal Representative), appeals the circuit court's order affirming the order of the probate court finding the testamentary trust (Trust) contained in the last will and testament (Will) of Bennie W. Burdette (Testator) requires a devisee to be living at the time the trust terminates in order to inherit trust assets. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Testator died in 1965 leaving his Will dated February 8, 1955. Testator was predeceased by his wife, Ella, and survived by his five children: Bennie E. Burdette; Helen B. Peters; Bertha B. Bozeman; Claude M. Burdette; and Zelene B. Adams.

Under Item VIII of his Will, Testator bequeathed the residue of his estate in trust, naming The Farmer's Bank of Simpsonville (now Bank of America) and Bertha B. Bozeman as co-trustees. Item VIII(2)(c) directs the trustees, in the event of the death of Testator's wife, to apply the entire balance of Testator's residuary estate to the benefit of his daughter, Helen B. Peters, for her lifetime. Item VIII(2)(d) provides that upon the death of Peters and when her youngest natural child reaches the age of twenty-one, the trust shall cease and be divided as follows:

One share to the natural child or children *per stirpes* of my daughter, Helen B. Peters; one share to each of my children, Claude M. Burdette, Zelene B. Adams and Bertha B. Bozeman, living at the time of the termination of said trust. If either of my said three children shall have died before the termination of this trust, leaving a child or children surviving, the child or children of said deceased child of mine shall take *per stirpes* the share of the corpus and accumulated net income of which his, her or their parent would have taken if living. If any of my four children Helen B. Peters, Claude M. Burdette, Zelene B. Adams and Bertha B. Bozeman, should die without leaving a surviving child or children, the share of the corpus and accumulated net income which the child or children of Helen B. Peters, and the

share which my other child or children would have taken if living, shall be divided among my surviving children, Claude M. Burdette, Zelene B. Adams, and Bertha B. Bozeman, and the child or children *per stirpes* of any of my said three deceased children who shall have died leaving a surviving child or children, as the case may be.

Peters died on July 3, 2003 and was survived by one son who was over the age of twenty-one. Claude M. Burdette died in 1970, predeceasing Peters, but was survived by two sons, one of whom was Charles A. Burdette. Charles A. Burdette also predeceased Peters and was not living at the time the trust terminated.

In December 2003, Personal Representative filed this action requesting the probate court to find, pursuant to Item VIII(2)(d), Charles A. Burdette had a vested remainder interest in the Trust based on having survived his father, Claude M. Burdette. The probate court held the plain language of Testator's Will "clearly articulates the Settlor's intention that the assets pass lineally, *per stirpes,* to heirs surviving Helen B. Peters and living at the time of Trust termination, or to their surviving children." On appeal, the circuit court affirmed the ruling of the probate court.

### *STANDARD OF REVIEW*

An appellate court's determination of the standard of review for matters originating in the probate court is controlled by whether the cause of action is at law or in equity. *Golini v. Bolton,* 326 S.C. 333, 338, 482 S.E.2d 784, 787 (Ct.App.1997); *Univ. of S. Cal. v. Moran,* 365 S.C. 270, 274, 617 S.E.2d 135, 137 (Ct.App.2005).

The construction of a will is an action at law. *Epworth Children's Home v. Beasley,* 365 S.C. 157, 165, 616 S.E.2d 710, 714 (2005); *Estate of Stevens v. Lutch,* 365 S.C. 427, 430, 617 S.E.2d 736, 737 (Ct.App.2005); *NationsBank of S.C. v. Greenwood,* 321 S.C. 386, 392, 468 S.E.2d 658, 662 (Ct.App.1996). "On appeal from an action at law that was tried without a jury, the appellate court can correct errors of law, but the findings of fact will not be disturbed unless found to be without evidence which reasonably supports the judge's findings." *Blackmon v. Weaver,* 366 S.C. 245, 249, 621 S.E.2d

42, 44 (Ct.App.2005). Because Personal Representative has admitted that no facts are in dispute in this case, this court can review conclusions of law based on those facts. *See Coakley v. Horace Mann Ins. Co.,* 363 S.C. 147, 152, 609 S.E.2d 537, 540 (Ct.App.2005).

In the case *sub judice,* a trust is encapsulated within the four corners of a will. An action to construe or interpret a testamentary trust is equitable in nature. *Waddell v. Kahdy,* 309 S.C. 1, 4–5, 419 S.E.2d 783, 785–86 (1992). A declaration of rights arising in the administration of a trust generally lies in equity. *See First-Citizens Bank and Trust Co. of S.C. v. Hucks,* 305 S.C. 296, 298, 408 S.E.2d 222, 223 (1991).

It is not necessary for this Court to resolve the obvious conundrum as to whether the standard of review in this case is at law or in equity. Applying either standard, the result will be the same.

### *LAW/ANALYSIS*

Personal Representative argues the trial court erred in finding any interest Charles A. Burdette had in the residuary of Testator's estate (to be distributed at the dissolution of the trust) was conditioned upon Charles A. Burdette surviving Helen B. Peters. Specifically, Personal Representative avers Charles A. Burdette's interest in the Trust assets vested at the time Claude M. Burdette died in 1970 because no condition precedent remained—the only condition precedent was that Charles survive his father, Claude. It is Personal Representative's contention that, while Testator intended to require that his three named children survive their sister Helen in order to take a share of the Trust principal at her death, he did not desire this same requirement be placed on their children, i.e. his grandchildren. We disagree.

### 1. Construction of Wills

The paramount rule of will construction is to determine and give effect to the testator's intent. S.C.Code Ann. § 62–1–102(b)(2) ("The underlying purposes and policies of this Code are ... (2) to discover and make effective the intent of a decedent in the distribution of his property."); *Epworth Children's Home v. Beasley,* 365 S.C. 157, 165, 616 S.E.2d 710,

714 (2005); *Bob Jones Univ. v. Strandell*, 344 S.C. 224, 230, 543 S.E.2d 251, 254 (Ct.App.2001); *Matter of Clark*, 308 S.C. 328, 330, 417 S.E.2d 856, 857 (1992) (stating the cardinal rule of will construction, as well as the primary inquiry of the appellate court, is the determination of the testator's intent). "[A] testator's intention, as expressed in his will, governs the construction of it if not in conflict with law or public policy...." *In re Estate of Prioleau*, 361 S.C. 627, 631, 606 S.E.2d 769, 772 (2004); *White v. White*, 241 S.C. 181, 185, 127 S.E.2d 627, 629 (1962). In construing the provisions of a will, every effort must be made to determine and carry out the intentions of the testator. *Prioleau*, 361 S.C. at 631, 606 S.E.2d at 772; *Citizens & S. Nat'l Bank v. Cleveland*, 200 S.C. 373, 377, 20 S.E.2d 811, 812 (1942). Indeed, "[t]he rules of construction are subservient to the primary consideration of ascertaining what the testator meant by the terms used in the written instrument itself...." *Kemp v. Rawlings*, 358 S.C. 28, 34, 594 S.E.2d 845, 849 (2004); *Allison v. Wilson*, 306 S.C. 274, 278, 411 S.E.2d 433, 435 (1991); *see also Black v. Gettys*, 238 S.C. 167, 173, 119 S.E.2d 660, 662–63 (1961) (stating while there are certain rules of construction to be followed in seeking the intention of the testator, they are all subservient to the paramount consideration of determining what the testator meant by the terms used).

In determining the intent of the deceased, a court must always look first to the language of the will itself. *Pate v. Ford*, 297 S.C. 294, 299, 376 S.E.2d 775, 778 (1989); *Bob Jones Univ.*, 344 S.C. at 230, 543 S.E.2d at 254 ("In construing a will, a court's first reference is always to the will's language itself."). The primary rule of ascertaining intent is that "[r]esort is first to be had to the instrument's language, and if such is perfectly plain and capable of legal construction, such language determines the force and effect of the instrument." *Chiles v. Chiles*, 270 S.C. 379, 383–84, 242 S.E.2d 426, 429 (1978) (quoting *Superior Auto. Ins. Co. v. Maners*, 261 S.C. 257, 263, 199 S.E.2d 719, 722 (1973)). The court must be guided by the words which the testator has used, reading them in the light of established principles of law. *White*, 241 S.C. at 186, 127 S.E.2d at 629.

"In construing the language of a will, the appellate court must give words their ordinary, plain meaning unless it is clear the testator intended a different sense, or unless such a meaning would lead to an inconsistency with the testator's declared intention." *Epworth Children's Home*, 365 S.C. at 165, 616 S.E.2d at 714–15; *accord Bob Jones Univ.*, 344 S.C. at 230, 543 S.E.2d at 254. "A will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity, repugnancy or inconsistency with the declared intention of the testator, as abstracted from the whole will, should follow from such construction." *Matter of Clark*, 308 S.C. at 330, 417 S.E.2d at 857; *accord Epworth Children's Home*, 365 S.C. at 165, 616 S.E.2d at 715; *Love v. Love*, 208 S.C. 363, 369, 38 S.E.2d 231, 233 (1946). Only when a will's terms or provisions are equivocal, may the court resort to extrinsic evidence to resolve the ambiguity. *In re Estate of Hyman*, 362 S.C. 20, 26, 606 S.E.2d 205, 207 (Ct.App.2004).

In assigning meaning to the words used in the will and ascertaining the intent of the testator, the court must view the will as a whole. *See Pate*, 297 S.C. at 299, 376 S.E.2d at 778. Intent is to be ascertained upon consideration of the entire will. *Epworth Children's Home*, 365 S.C. at 165, 616 S.E.2d at 714; *Prioleau*, 361 S.C. at 631, 606 S.E.2d at 772. "[E]ach item of a will must be considered in relation to the other portion." *Epworth Children's Home*, 365 S.C. at 166, 616 S.E.2d at 715; *Allison*, 306 S.C. at 278, 411 S.E.2d at 435. "A court may not consider the will piecemeal, but must give due weight to all its language and provisions, giving effect to every part when, under a reasonable interpretation, all the provisions may be harmonized with each other and with the will as a whole." *Epworth Children's Home*, 365 S.C. at 166, 616 S.E.2d at 715 (citations omitted). Arriving at the intent of the testator requires that every item be considered in relation to the other portions of the will. *Gettys*, 238 S.C. at 174, 119 S.E.2d at 663. "An interpretation that fits into the whole scheme or plan of the will is most likely to be the correct interpretation of the intent of the testator." *Epworth Children's Home*, 365 S.C. at 166, 616 S.E.2d at 715; *accord Lemmon v. Wilson*, 204 S.C. 50, 69, 28 S.E.2d 792, 800 (1944).

### 2. Construction of Trusts

"The rules of construction that apply in this State to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." S.C.Code Ann § 62–7–112 (2005 Act No. 66, § 1, effective January 1, 2006).

The primary consideration in interpreting and construing a testamentary trust is to discern the testator's intent. *Epworth Children's Home,* 365 S.C. at 166, 616 S.E.2d at 715; *Bowles v. Bradley,* 319 S.C. 377, 380, 461 S.E.2d 811, 813 (1995) ("The primary consideration in construing a trust is to discern the settlor's intent."). Indeed, "the law relating to discerning the drafter's intent is identical for wills and trusts." *Epworth Children's Home,* 365 S.C. at 166, 616 S.E.2d at 715 (citing *All Saints Parish, Waccamaw v. Protestant Episcopal Church,* 358 S.C. 209, 224 n. 10, 595 S.E.2d 253, 262 n. 10 (Ct.App.2004)). In ascertaining a settlor's intent, if the language of the trust instrument is perfectly plain and capable of legal construction, such language determines the force and the effect of the instrument. *Chiles v. Chiles,* 270 S.C. 379, 384, 242 S.E.2d 426, 429 (1978); *see also Floyd v. Floyd,* 365 S.C. 56, 615 S.E.2d 465 (Ct.App.2005) (affirming trial court's construction of testamentary trust language relating to trustee's discretionary powers); *Moran,* 365 S.C. 270, 617 S.E.2d 135 (construing the plain language of trust specifically to authorize trustee to enter into settlements); *Estate of Stevens v. Lutch,* 365 S.C. 427, 617 S.E.2d 736 (Ct.App.2005) (relying on the trust language as most persuasive of settlor's intent regarding discretionary power of trustee).

"[C]onstruction depends upon the trustor's intent at the time of execution as shown by the face of the document and not on any secret wishes, desires or thoughts after the event." Chiles, 270 S.C. at 384, 242 S.E.2d at 429 (quoting *Brock v. Hall,* 33 Cal.2d 885, 206 P.2d 360 (1949)). Extrinsic evidence is not admissible to alter the plain language of a trust instrument. *Bowles,* 319 S.C. at 380, 461 S.E.2d at 813.

### 3. Vesting

The word "vest" can be employed to refer to either "a vesting in interest" or "a vesting in possession." *Loadholt v.*

*Harter,* 260 S.C. 176, 181, 194 S.E.2d 880, 883 (1973). As the latter meaning would have no further effect than if the grantor had declared the property was "to and be possessed by" the remaindermen upon the death of Helen (and when her youngest child reaches twenty-one years of age), the former use of the term, in the sense of "to vest in interest," is unequivocally the meaning of term in the case *sub judice. See id.*

Our supreme court has stated:

A vested remainder is one the owner of which has the present capacity of taking the seisin in case the particular estate were to determine. But no degree of uncertainty as to the remainderman's ever enjoying his remainder will render it contingent, provided he has by the limitation a present absolute right to enjoy the estate the instant the prior estate should determine.

While a contingent remainder is one limited to take effect either to a dubious and uncertain person or upon a dubious and uncertain event, it does not follow that every remainder which is subject to a contingency or a condition is therefore a contingent remainder. The condition may be precedent or it may be subsequent if the former, the remainder is contingent; if the latter, it is vested, though it may be divested by the happening of the condition.

*Peoples Nat. Bank of Greenville v. Hable,* 243 S.C. 502, 510, 134 S.E.2d 763, 766 (1964) (internal quotations omitted).

 It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment which marks the difference between a vested and a contingent interest. *Loadholt,* 260 S.C. at 182, 194 S.E.2d at 883 (quoting *Walker v. Alverson,* 87 S.C. 55, 59, 68 S.E. 966, 969 (1910)).

## 4. Application

 The plain language of the Trust articulates Testator's clear intention to pass the Trust assets to heirs living at the time the Trust terminates. It is true, as Personal Representative contends, that the law favors the vesting of estates at the earliest time possible. *Gettys,* 238 S.C. at 177, 119 S.E.2d ·at 664–65; Walker, 87 S.C. at 57–58, 68 S.E. at 967. The Trust provides that in the event any of Testator's "three children shall have died before the termination of this trust,

**leaving a child or children surviving,** the child or children of said deceased child of mine shall take *per stirpes* the share of the corpus and accumulated net income of which his, her or their parent would have taken if living." (emphasis added). This language indicates Testator only desired a grandchild to take if he or she were "surviving" at the time of the termination of the trust. Therefore, the trial court did not err in holding Charles A. Burdette's interest in the Trust assets was conditioned upon his surviving Peters.

While a remainder may vest in title before the life estate ends (i.e."determines") at the death of the life tenant, any interest the grandchildren had in the trust property did not vest until the time of Helen's death. The Trust specifically stated: "Upon the death of my daughter, Helen B. Peters [or if later, upon her youngest child reaching the age of twenty-one], the trust herein created in ... **shall cease and determine** ..." (emphasis added). It was at this point in time, when the trust terminated, that Testator intended vesting to occur.

Our interpretation is further substantiated by consideration of the entire Will and Trust. Throughout these documents, Testator evidences a common scheme of devising assets only to persons surviving him or surviving prior devisees. Testator bequeathed his home to his wife, "[i]f she shall survive me," gave his daughter, Zelene B. Adams, $3,500 for running his business "if she shall survive me," and left a vacant lot to his son, Bennie E. Burdette, for life "if he shall survive me...." Upon Bennie E. Burdette's death, the vacant lot was directed to pass to Bennie E. Burdette's wife, for life, "if she be then living." Similarly, Testator left Peters a house, for her natural life, "if she shall survive me" and instructed that the house shall pass to Peters' son if he survives until the age of twenty-five and is living at the time of Peters' death. These other devises indicate Testator's general intent to leave assets to heirs living at the time a bequest passes. Thus, in viewing the passage at issue in light of the Will and Trust as a whole, the clear intent of the Testator under Item VIII(2)(d) is to require a devisee be alive at the time of the termination of the Trust in order to take an interest in the Trust assets.

We acknowledge the Testator's direct requirement of survivorship in other portions of the Will and Trust could arguably provide support for finding that Testator knew how to specifically require survivorship, and the failure to do so under Item VIII, indicates survivorship is not obligatory. *See Thomson v. Russell,* 131 S.C. 529, 538–39, 128 S.E. 421, 422 (1925) (holding creation of life estate in one part of will demonstrates knowledge of requirements and that intention in other part is to not create life estate). We read the Trust as clearly requiring survivorship. Further, the circumstances in this case do not lead to interpreting the Trust as the court did in *Thomson.* We note that "while precedent is helpful at times, 'no will has a brother,'" and "[a] court may find little guidance in prior decisions interpreting wills ... due to the different intent and circumstances of each testator...." *Epworth Children's Home,* 365 S.C. at 166, 616 S.E.2d at 715 (citation omitted).

## CONCLUSION

We rule the language of the Will and Trust clearly indicates Testator's intent that the Trust assets pass only to devisees surviving at the time the Trust terminates. Accordingly, the decision of the trial court is

**AFFIRMED.**

HUFF and BEATTY, JJ., concur.