**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Philip Pringle, as the duly appointed Guardian ad Litem for Alex Pringle, Respondent,

v.

Janet Mewshaw, individually and as Trustee, Appellant.

Appellate Case No. 2022-000682

———————

Appeal From York County
Carolyn W. Rogers, Probate Court Judge
Daniel Dewitt Hall, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-182
Submitted April 1, 2025 – Filed June 4, 2025

———————

**AFFIRMED**

———————

Bess Jones DuRant, of Sowell & DuRant, LLC, of Columbia, for Appellant.

Daniel Dominic D'Agostino, of DAgostino/Davis Law Group, of York, for Philip Pringle.

———————

**PER CURIAM:** Janet Mewshaw appeals the circuit court's order affirming the probate court's order removing her as trustee of a trust (the Trust) created by her

daughter, Sabrina Pringle, and ordering her to repay certain monies to the Trust along with expert's fees and attorney's fees.  We affirm.

**FACTS**

Sabrina passed away in March of 2017 after a cancer diagnosis.  Prior to that, in September of 2016, with the assistance of attorney friends, she drafted an estate plan including executing a will and creating a trust for her son Alex Pringle's benefit.  Sabrina named her mother, Mewshaw, as the trustee and expressed her desire that the trustee use the Trust assets to care for Alex.  Sabrina left to the Trust the residence in which she, Alex, Mewshaw, and Mewshaw's husband (Sabrina's stepfather) had resided together prior to her death.  Sabrina expressed her desire that the home remain in the family as a place of importance and family memories for her son.  She further stated Mewshaw and her husband could reside in and rent the home for fair market value as determined in the trustee's sole discretion.  This family arrangement is all against the backdrop of Sabrina and Alex's father, Philip Pringle (Pringle), having gone through a contentious divorce a few years earlier.  Sabrina named her brother, Brent Cannon, as contingent trustee in the event Mewshaw was unable to serve.

In addition to the family home, Sabrina's assets consisted of several investment accounts, including two retirement accounts with Merrill Lynch valued at $378,010.52 and $19,670.13 at the time of her death.[1]  Sabrina executed documents to change the beneficiary of these accounts from Mewshaw individually to the Trust at the time she prepared her will.  The designation was to the "Trustee of the [T]rust under the will of Sabrina Cannon Pringle dated September 30, 2016."  Sabrina and Mewshaw also had a joint bank account with right of survivorship.

After Sabrina's death, Pringle learned of the Trust and had concerns regarding Meshaw's administration of it.  He filed a lawsuit in probate court for an accounting of the Trust assets, to have Mewshaw removed as trustee, and to require Mewshaw to pay back to the Trust any funds wrongfully expended. At trial, it became known that Mewshaw had expended some of these funds in legal fees and on private investigators in an effort to gain custody of Alex. Charlene Controne of BNA Wealth Management was hired by the court to do a forensic accounting.  Mewshaw had been ordered to provide an accounting but failed to do so.  Controne testified she had reviewed records, but some were

---

[1] Other assets were included in the Trust but are not at issue in this case.

missing and others lacked specificity.  Based on this review, she found wrongful withdrawals and unpaid rent left an amount of $141,320.00 due to the Trust.

The probate court determined Mewshaw had violated her responsibilities as Trustee and removed her from the position.  The probate court inquired if Cannon would be involved with administering the Trust, and he agreed that he would but that he would leave it to professionals to actually manage the Trust.  The probate court named BNA Wealth Management Division, by and through Controne, as the Trustee and named Cannon as a Trust Protector pursuant to section 62-7-1005(A) of the South Carolina Code (2014).  The probate court ordered Mewshaw to repay the Trust $141,320.00 in corpus, $8,300.00 in expert fees, and $10,612.70 in attorney's fees.

Mewshaw filed an appeal.  Subsequently, Pringle filed a motion to reopen the case to introduce evidence Mewshaw had signed documents to liquidate the Merrill Lynch accounts referenced above.  The probate court permitted this additional evidence and issued a new order indicating the documents and deposition testimony related to it supplemented prior evidence and further supported what had already been determined—that Mewshaw had wrongfully liquidated the accounts because they belonged to the Trust.  The order made no additional or different findings of fact or law and did not grant any additional or different relief than the prior order.[2]

I.  LAW/ANALYSIS

---

[2] As an initial matter, Pringle contends all the findings of the original order are the law of the case.  He maintains this because Mewshaw failed to appeal the order issued by the probate court after the case was reopened to take the deposition of Stephen Lang and admit documents regarding Mewshaw's liquidation of the Merrill Lynch accounts.  However, as noted above the supplemental order made no changes to the original order and did not even repeat the findings contained in the original order.  Therefore, we find Mewshaw's appeal of the probate court's initial order, which determined the substantial rights of the parties, effectively preserved the right to dispute the issues determined therein. *See Shirley's Iron Works, Inc. v. City of Union,* 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013) ("The doctrine of the law of the case applies to an order or ruling which finally determines a substantial right.").

### A. Removal of Mewshaw as Trustee

Mewshaw argues the circuit court erred in affirming the probate court's decision to remove her as Trustee. We disagree.

"An appellate court's determination of the standard of review for matters originating in the probate court is controlled by whether the cause of action is at law or in equity." *Holcombe-Burdette v. Bank of Am.*, 371 S.C. 648, 654, 640 S.E.2d 480, 483 (Ct. App. 2006). "An action to remove a trustee is equitable in nature." *Baskin v. Walkup*, 445 S.C. 353, 362, 913 S.E.2d 282, 286 (Ct. App. 2025). "[I]f the probate proceeding is equitable in nature, the [appellate] court, on appeal, may make factual findings according to its own view of the preponderance of the evidence." *Matter of Howard*, 315 S.C. 356, 362, 434 S.E.2d 254, 257-58 (1993). "A trustee shall administer the trust solely in the interests of the beneficiaries." S.C. Code Ann. §62-7-802(a) (2014). "A trustee shall keep adequate records of the administration of the trust." S.C. Code Ann. § 62-7-810(a) (2014). "The Probate Court has exclusive jurisdiction of proceedings initiated by interested parties concerning the internal affairs of trusts" including the appointment or removal of a trustee. S.C. Code Ann. §62-7-201(a) (2014).

The record demonstrates Mewshaw violated her duty as Trustee in multiple ways. While she may have later been misinformed regarding the ownership of the Merrill Lynch accounts, she initially believed them to be part of the Trust. In spite of this belief and the plain language of the will and trust, explained in more detail below, she attempted to convert the beneficiary of the Merrill Lynch accounts to herself individually and attempted to liquidate the accounts. Additionally, she and her husband occupied Sabrina's home for more than ten months and failed to pay any rent as stipulated by the Trust. Rather, she paid the mortgage from the Trust funds. The record demonstrates Mewshaw was using Trust monies to pay bills and legal fees for a custody battle she was planning against Pringle. Furthermore, her record keeping was not compliant with her duties as a trustee and fiduciary. These actions establish by the preponderance of the evidence that Mewshaw had breached her duties as trustee. Consequently, the circuit court's affirmance of the probate court's decision to remove Mewshaw as trustee was appropriate.

### B. Appointment of Accounting Firm as Successor Trustee

Mewshaw also contends the circuit court erred in affirming the probate court's appointment of BNA Wealth Management by and through Charlene Controne as

successor trustee when Sabrina selected her brother for this position. We disagree.[3]

"[W]hen the court must fill a vacancy in the office of trustee, it should give effect to the settlor's expressed preference unless there are reasons not to do so." *Bonney v. Granger*, 292 S.C. 308, 318, 356 S.E.2d 138, 144 (Ct. App. 1987). "The appointment of a trustee by the court is not a ministerial act; it is an act of judicial discretion." *Id*. at 319, 356 S.E.2d at 145. "In the exercise of that discretion, the court should always give careful consideration to the purposes of the trust and the best interest of all of the beneficiaries." *Id.*

In this instance, the primary purpose of the Trust was to provide for Alex. Sabrina also sought to foster a continuing relationship between Alex and Mewshaw and Mewshaw's husband. The fact that her brother was not named Trustee did not undercut this intent and was reasonable considering the familial relationship between Mewshaw and Cannon. Furthermore, the probate court appointed Sabrina's brother as Trust Protector. As such, Cannon monitors the Trust to ensure funds are spent in a fiscally responsible manner consistent with the wishes of the settlor. Cannon indicated that if he were Trustee, he would use an accounting firm to manage the Trust, so the regular management of the Trust would still not be in his hands. Sabrina was aware that neither her mother nor her brother was well-versed in the management of trusts. Therefore, her intent appears to have been less about management of the Trust and more about ensuring that the people who cared most for Alex would have voice in how the Trust assets were spent. Given the circumstances of this case and her brother's inclusion as Trust Protector, this decision by the probate court did not violate Sabrina's intent and was properly affirmed by the circuit court.

## C. Bank Account and Merrill Lynch Retirement Accounts[4]

---

[3] Since removal of a trustee is equitable, appointment of a successor is also likely equitable, but in either case, we affirm. *Holcombe-Burdette*, 371 S.C. at 655, 640 S.E.2d at 483 ("It is not necessary for this Court to resolve the obvious conundrum as to whether the standard of review in this case is at law or in equity. Applying either standard, the result will be the same.").

[4] "An action to construe or interpret a testamentary trust is equitable in nature." *Holcombe-Burdette*, 371 S.C. at 655, 640 S.E.2d at 483. "A declaration of rights arising in the administration of a trust generally lies in equity." *Id*.

Mewshaw contends the circuit court erred in affirming the probate court's order finding the joint bank account with right of survivorship and Merrill Lynch IRAs were Trust assets. We disagree.

First, Sabrina's will indicated any "property payable to the Trustee as a result of my death, including any property given to the Trustee under this will, shall be retained in trust or distributed as follows: . . . . If my son has not reached the age of thirty (30), the Trustee shall hold such property in trust for the benefit of my son . . . " Therefore, when Sabrina designated Mewshaw beneficiary of the Merrill Lynch accounts *as Trustee*, the funds belonged in the Trust. Mewshaw argues Sabrina's will "carves out [the Merrill Lynch accounts] from being subject to the probation of the Will and Trust "because they are investment accounts." She relies on the provision in Sabrina's will stating "[a]ll my *tangible personal property that was not held by me solely for investment purposes* . . . shall be disposed of as follows." Because the retirement accounts fall outside the scope of the "tangible personal property," this argument is without merit.

With regard to the bank account, the probate court did not determine the bank account was a Trust asset. It determined Mewshaw had wrongfully taken and spent funds specifically denominated for Alex from the Social Security Administration. Mewshaw correctly notes that by statute, if the funds are on deposit in a joint account with right of survivorship, the balance at death becomes the surviving owner's property. *See* S.C. Code Ann. § 62-6-202(a) (2014) ("[O]n death of a party sums on deposit in a multiple-party account belong to the surviving party or parties."). However, in this instance, the funds were only placed into the account because Sabrina was the "representative payee" for Alex. Sabrina was under an obligation to use the funds for Alex's benefit.[5] Once Mewshaw became the sole owner of the account that obligation extended to her to use the money for Alex's benefit. Having failed to show she had done so, we affirm the circuit court's affirmance of the probate court's order requiring Mewshaw to repay the funds to the Trust.

## D. Family Home

Mewshaw argues the probate court ignored Sabrina's intent regarding the family home and rent. We disagree.

---

[5] Funds paid to a representative payee are for the "use and benefit" of the individual recipient. 42 U.S.C.A. § 1383 (a)(2)(A)(ii).

"The primary consideration in construing a trust is to discern the settlor's intent. If the language of the trust instrument is plain and capable of legal construction, that language determines the force and effect of the instrument." *Bowles v. Bradley*, 319 S.C. 377, 380, 461 S.E.2d 811, 813 (1995) (citation omitted).

As a matter of clarification, the probate court's order, affirmed by the circuit court, did not specifically order the home sold, although the request from Pringle was that it be liquidated. However, the order was the practical equivalent of such instruction. The order stated Mewshaw could remain in the home for six more months if she paid rent and any associated household expenses such as utilities. If she missed a payment, she had 30 days to vacate. In reality, any issue with the property is subsumed by the fact that Mewshaw was removed as Trustee. The Trustee is empowered to make all determinations about what to do with the property. Sabrina indicated keeping the home was a request, not a requirement, and intended only that it be kept until Alex turned 30, provided such was reasonable. The Trustee could rent the home to renters other than the Mewshaws for fair market value, but the Trustee would have discretion to do that or dispose of the property in a way that was in the best interest of Alex and the Trust. The probate court's order did not circumvent Sabrina's intent when, as trustor, she qualified her effort to keep the family home with language specifically recognizing that doing so after her passing might not be possible or reasonable. Under all the circumstances and the language of the Will and Trust, the circuit court did not err in affirming the probate court's order.

### E. Charlene Controne's Testimony

Mewshaw next alleges the circuit court erred in affirming the probate court's order to the extent it relied on Controne's testimony as it contained improper legal conclusions about the Trust. Again, we disagree.

Part of Mewshaw's argument is that Controne assumed the joint bank account was part of the Trust. However, Controne did not indicate the account was part of the Trust. Rather, she indicated the amount of Alex's social security benefits that were deposited into the account should be repaid. Mewshaw also argues Controne relied on the erroneous assumption that the Merrill Lynch accounts were part of the Trust. As previously discussed, that assertion is without merit. Mewshaw rightfully points out that Controne drew conclusions about the propriety of certain expenditures because they lacked any documentation or were for fees associated with Alex's custody case. However, the probate court was aware of the basis for Controne's conclusions and heard Mewshaw's cross-examination of Controne on

those points. As the fact-finder, the probate court agreed with Controne that undocumented expenses and the custody fee costs were not appropriate expenditures. *See Weathers v. Bolt*, 293 S.C. 486, 488, 361 S.E.2d 773, 774 (Ct. App. 1987) ("It is axiomatic that the probate court was in the best position to judge credibility."); *Id.* ("The probate judge had an opportunity to see and hear the witnesses, judge their credibility and the weight to be attached to their testimony.") (citation omitted). We agree with the probate court's assessment and find it was proper for the circuit court to affirm these findings.

## F. Attorney's Fees and Expert's Fees

Finally, Mewshaw contends the award of attorney's fees should be reversed. We disagree.

"The decision of whether to award expert witness fees, like the decision to award attorney fees, rests within the sound discretion of the . . . court." *Brunner v. Brunner,* 296 S.C. 60, 62, 370 S.E.2d 614, 616 (Ct. App.1988). In determining whether an attorney's fee should be awarded, the following factors should be considered: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). When determining the reasonableness of a fee award, the court should consider the following factors: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Mewshaw appeals the award of attorney's fees on the basis that a reversal of the probate court's order is appropriate and therefore Pringle's attorneys did not obtain the requisite beneficial results. Because we affirm the circuit court on the merits of the case, this argument fails. Mewshaw also appeals the amount of the attorney's fees award based on an agreement between the parties in the related family court case in which Mewshaw agreed to pay $17,500 for work in the family and probate matters incurred through February 28, 2019. She maintains the amount of fees should be reduced by $385. However, Pringle argues any miscalculation in attorney's fees was not brought to the probate court's attention and is therefore not preserved. We agree with this position. The record does not demonstrate where Mewshaw raised the *amount* of attorney's fees and in response to Pringle's

argument, she offers no rebuttal other than that a reversal by the appellate court would result in the reversal of the attorney's fee award. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

Based on all of the foregoing, the order of the circuit court is

**AFFIRMED.**[6]

**KONDUROS, MCDONALD, and VINSON, JJ., concur.**

---

[6] We decide this case without oral argument pursuant to Rule 215, SCACR.